1  KRISTIN N. REYNA DEHART (SBN 211075)
kreyna@grsm.com
2  ROBERT J. OLSON (SBN: 284736)
rolson@grsm.com
3  GORDON REES SCULLY MANSUKHANI, LLP
101 W. Broadway, Suite 2000
4  San Diego, CA 92101
Telephone: (619) 230-7760
5  Facsimile: (619) 696-7124

6  Attorneys for Defendants
CAMP PENDLETON & QUANTICO HOUSING, LLC; LPC PENDLETON
7  QUANTICO PM; LINCOLN MILITARY PROPERTY MANAGEMENT LP

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 10  JOHN DOE, an individual; JANE DOE, an individual; JOHN DOE 1, a minor, by and 11  through his guardian ad litem, JANE DOE; JOHN DOE 2, a minor, by and through his 12  guardian ad litem, JANE DOE; <br><br>13                    Plaintiffs, <br><br>14       vs. <br><br>15  CAMP PENDLETON & QUANTICO HOUSING LLC, a Delaware limited liability 16  company; LPC PENDLETON QUANTICO PM LP, a Delaware limited partnership; 17  LINCOLN MILITARY PROPERTY MANAGEMENT, LP, a Delaware limited 18  partnership; and DOES 1 through 50, inclusive, <br>19 <br>20                    Defendants. <br>21 | CASE NO. **'20 CV 0224 GPC AHG** <br><br>**NOTICE OF REMOVAL** <br>**[28 U.S.C. §§ 1331, 1441, 1442, 1446]** |

22        Pursuant to 28 U.S.C. §§ 1331, 1441, 1442 and 1446, Defendants Camp

23  Pendleton & Quantico Housing LLC, LPC Pendleton Quantico PM LP, and

24  Lincoln Military Property Management LP, collectively referred to as

25  "Defendants," hereby remove to this Court a civil lawsuit filed in the Superior

26  Court for the County of San Diego, Case Number 37-2019-00066467-CU-PO-

27  CTL.  In support of this Notice of Removal, Defendants state:

28  / / /

-1-
NOTICE OF REMOVAL

1.      On December 10, 2019, Plaintiffs John Doe, Jane Doe, John Doe 1, a minor, by and through his guardian ad litem, Jane Doe, and John Doe 2, a minor, by and through his guardian ad litem, Jane Doe ("Plaintiffs") filed their Complaint with the San Diego County Superior Court, relating to their former military housing located at 1582 Black Eagle Drive, Apt. D, San Diego, California (the "Subject Property").  On January 6, 2020, Camp Pendleton & Quantico Housing LLC, LPC Pendleton Quantico PM LP, and Lincoln Military Property Management LP, were served with an incomplete copy of the Complaint, summonses, Plaintiffs' applications and order for appointment of guardian ad litem, and Plaintiffs' application and order to proceed under pseudonym.  A copy of the above listed papers which were served on Defendants are attached to this Notice of Removal as Exhibit A.

2.      Defendants Camp Pendleton & Quantico Housing LLC and LPC Pendleton Quantico PM LP, join in this removal, but do not have any connection to the events alleged in the Complaint, and will be moving to dismiss upon removal. (Declaration of K. Reyna DeHart "DeHart Decl." at ¶2).

3.      While Plaintiffs failed to serve Defendants a full copy of their Complaint, Defendants obtained a full copy of the Complaint from the Superior Court website.  Defendants attach the full copy of the Complaint to the Notice of Removal as Exhibit B.  Defendants do not waive proper service of the Complaint and plan to bring a motion to dismiss on this grounds; however, in an abundance of caution, Defendants file their notice of removal of this case within 30 days of being served papers relating to the Complaint and this action by Plaintiffs.  (DeHart Decl. at ¶3).

4.      Based on the allegations in the Complaint, Plaintiffs allege that Defendant Camp Pendleton & Quantico Housing LLC was involved in the ownership of the Subject Property, or otherwise involved in the management, maintenance, leasing or repairs of the Subject Property.  (Ex. B, Complaint at ¶6).

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1   Defendants dispute this.  The ground lessor of the Subject Property is San Diego

2   Family Housing, LLC.  (DeHart Decl. at ¶4).  Similarly, Plaintiffs allege that

3   Defendant LPC Pendleton Quantico PM LP was also involved in the ownership,

4   management, leasing, maintenance or repairs of the Subject Property.  (Ex. B,

5   Complaint at ¶7).  Defendants also dispute the involvement of this defendant with

6   the Subject Property.  The property manager of the Subject Property is Defendant

7   Lincoln Military Property Management LP.  (Ex. B, Complaint at ¶8); DeHart

8   Decl., ¶4).

9        5.    This action is removable to this Court on three independent bases: (1)

10   pursuant to 28 U.S.C. § 1331, because the events alleged in the Complaint

11   occurred within a federal enclave; and (2) under 28 U.S.C. § 1442, because (a)

12   Defendant Camp Pendleton & Quantico Housing LLC is a federal agency

13   (moreover, San Diego Family Housing, LLC, the actual ground lessor, although

14   not presently named, is also federal agency); (b) at all relevant times Lincoln

15   Military Property Management LP was acting under a federal officer.

16        6.    Because the events alleged in the Complaint occurred on a federal

17   enclave, this Court has jurisdiction under 28 U.S.C. § 1331.  See, e.g., Akin v.

18   Ashland Chem. Co., 156 F.3d 1030, 1034 (10th Cir. 1998) (finding that "[p]ersonal

19   injury actions which arise from incidents occurring in federal enclaves may be

20   removed to federal district court as a part of federal question jurisdiction."); see

21   also Federico v. Lincoln Military Housing, LLC et. al, 901 F. Supp. 2d 654 (E.D.

22   Va. Oct. 18, 2012) (upholding removal of nearly identical contract (residential

23   lease) and tort claims against affiliated "Lincoln" entities that occurred on federal

24   enclave).  Authority for federal enclave jurisdiction arises from Article I, section 8,

25   clause 17 of the United States Constitution, which provides in relevant part that

26   "Congress shall have the power . . . to exercise exclusive Legislation . . . over all

27   / / /

28   / / /

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, Dock-Yards, and other needful Buildings."  U.S. Const., Art. I § 8, cl. 17.

7.     Federal courts, including the Ninth Circuit, routinely interpret this clause to permit removal of tort claims filed in state court if the alleged tort was committed on a federal enclave.  The Ninth Circuit held, in Durham v. Lockheed Martin Corp., 445 F.3d 1247 (9th Cir. 2006), that "Federal Courts have federal question jurisdiction over tort claims that arise on 'federal enclaves.'" Id. at 1250; Willis v. Craig, 555 F.2d 724, 726 n.4 (9th Cir. 1977) (the Court had "no quarrel with the propriety of enclave jurisdiction in this case (if the facts support it), even though the state courts may have concurrent jurisdiction.").

8.     In Akin, several Air Force employees brought toxic tort claims against certain manufacturers of asbestos in state court.  156 F.3d at 1033-34.  The complaint alleged that the employees were exposed to asbestos at the Tinker Air Force Base in Oklahoma City.  Id. at 1033.  The defendants removed the case to federal court based on federal enclave jurisdiction.  Id. at 1034.  The Tenth Circuit upheld removal of the case, finding that "personal injury actions which arise from incidents occurring in federal enclaves may be removed to federal district court as a part of federal question jurisdiction."  Id.; see also Stokes v. Adair, 265 F.2d 662, 665-66 (4th Cir. 1959) (finding federal district court possessed jurisdiction for personal injuries arising on a federal enclave); Mater v. Holley, 200 F.2d 123, 124-25 (5th Cir. 1952) (finding that federal courts have jurisdiction over torts committed on federal enclaves); Lawler v. Miratek Corp., 2010 WL 743925, at *2 (W.D. Tex. Mar. 2, 2010) (finding that state law claim for defamatory statement allegedly made at Fort Bliss could be removed under federal enclave jurisdiction).

9.     A federal enclave is created where the federal government acquires land by purchase or condemnation with the consent of the state or commonwealth in which the land is located.  See Humble Pipe Line v. Waggonner, 376 U.S. 369,

371-72 (1964).  "In determining whether a claim arises on a federal enclave, courts have simply looked to see where all the 'pertinent events' took place."  <u>Rosseter v. Industrial Light & Magic</u>, 2009 WL 210452, at *2 (N.D. Cal. Jan 27, 2009) (citing <u>Stiefel v. Bechtel Corp.</u>, 497 F. Supp. 2d 1138, 1148 (S.D. Cal 2007)).

10.    In this case, all of the acts alleged in the Complaint occurred on a federal enclave owned by the United States of America, Department of the Navy ("Navy").  Plaintiffs resided in military housing located at 1582 Black Eagle Drive, Apt. D, San Diego, California, which is part of the Miramar Townhomes neighborhood, and is within the United States Marine Corps Air Station Miramar (former Miramar Naval Air Station) jurisdictional boundaries.  (Ex. B, Complaint at ¶ 1; Exhibit 5 to DeHart Decl. [Map of Jurisdictional Boundaries of Miramar Naval Air Station from Bureau of Land Management, Jan. 2020; Exhibit 6 to DeHart Decl. [Description of Miramar Townhomes housing community as being "on base"]).  Plaintiffs have asserted various claims grounded in tort, alleging that they suffered damages when they were exposed to moisture, water intrusion and mold conditions at the home in which they resided, as well as a hotel on the "military base" where there were allegedly "dangerous chemicals."  (Ex. B, Complaint, at e.g., ¶¶ 15-48).  All events upon which these claims are based occurred within the jurisdictional boundaries of Marine Corps Air Station Miramar and, in fact, occurred almost exclusively at Plaintiffs' home on base.  <u>See id.</u> (describing alleged conditions at the home and the on-base hotel, including complaints of conditions).

11.    The property on which Plaintiffs' home is located in the Miramar Townhomes neighborhood, and other properties surrounding it in San Diego, California, was originally ceded to the United States Government from Mexico in the Treaty of Guadalupe Hidalgo of 1848. Treaty of Guadalupe Hidalgo, Art. V, 1848.  (DeHart Decl., Exhibit 1).  Section 3 of the California Statehood Act conditioned the State of California's admission to the Union on acknowledgment

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

NOTICE OF REMOVAL

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1    of, and promise to not interfere with or impair, federal title to public lands.  An Act

2    for the Admission of the State of California into the Union, Thirty-First Congress,

3    Sess. 1, 1850.  (DeHart Decl., Exhibit 2).  By the California Statutes of 1897,

4    chapter 56, the State of California ceded to the United States exclusive jurisdiction

5    over all lands within the State then held, occupied or reserved by the government

6    of the United States for military purposes or defense, or which thereafter would

7    ceded or conveyed to the government of the United States for such purposes.  Cal.

8    Statutes, 1897, Ch. 56.  (DeHart Decl., Exhibit 3).  Formerly known as Camp

9    Kearny during World War I, the Navy rapidly expanded the airfield and

10   commissioned Naval Air Auxiliary Station Camp Kearny in 1943; within a few

11   years, the Marine Corps established the Marine Corps Air Depot adjacent to it and

12   expanded the installation to 29,000 acres, ultimately becoming Marine Corps Air

13   Station Miramar in 1946.  In 1947, the Marine Corps moved to El Toro and the

14   installation became Naval Air Station Miramar.  When Marine Corps Air Stations

15   El Toro and Tustin were closed in 1997, the installation officially once again

16   became Marine Corps Air Station Miramar.  (See Exhibit 7 to DeHart Decl.

17   [MCAS Miramar, California, United States Marine Corps, 2011, Sec. 2.0 "MCAS

18   Miramar Land Use," Sec. 2.2, 2.3]). The Subject Property is located in the portion

19   of MCAS Miramar known as the "Main Station."  (Id., Fig. 2-2, Sec. 2.5.1; Ex. 5

20   to DeHart Decl., BLM Maps).  As such, this land is unequivocally a federal

21   enclave, and is further under exclusive federal jurisdiction, as there has been no

22   retrocession of this portion of MCAS Miramar/former Miramar Naval Air Station

23   to the State.  (Exhs. 5-7 to DeHart Decl.; DeHart Decl. at ¶¶9-10).  Additionally,

24   the San Diego County Assessor's office has confirmed they do not maintain

25   information on the Subject Property because of its "military" designation.  (DeHart

26   Decl. at ¶11).

27        12.    Furthermore, under the Lease Agreement at issue, which is explicitly

28   referenced in the Complaint although not attached thereto, the Plaintiffs explicitly

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

agreed "that this Lease and the contractual relationship between the parties shall be construed exclusively in accordance with, and shall be exclusively governed by, <u>federal substantive law</u>…." with only a few select California Civil Code sections which Plaintiffs agreed would also apply.  (Ex. 4 to DeHart Decl., Lease, ¶ 34 (emphasis added)).

13.  The circumstances in this case are nearly identical to those addressed <u>Federico v. Lincoln Military Housing LLC et al.</u>, 901 F. Supp. 2d 654 (E.D. Va. 2012).   In that case, military housing tenants filed a complaint against Lincoln Military Housing LLC, Mid-Atlantic Military Family Communities, LLC, and LPC Property Management, Inc., which are affiliates of the Defendants in this case, in Virginia state court.  The <u>Federico</u> complaint, similar to this case, asserted tort, as well as statutory, and contract claims, alleging bodily injury and property damages resulting from alleged moisture and mold conditions in their home in privatized military family housing managed by the defendants.  The <u>Federico</u> defendants timely removed that case to the United States District Court for the Eastern District of Virginia.  The <u>Federico</u> plaintiffs moved to remand the case, asserting that the Enclave Clause did not provide federal jurisdiction over the state claims.

14.  On September 21, 2012, the Eastern District of Virginia denied the <u>Federico</u> plaintiffs' motion, finding that the requirements of federal enclave jurisdiction had been satisfied.  After that removal, seven similar actions were removed and consolidated with <u>Federico</u>.   The Court found that it had jurisdiction over the claims under the Enclave Clause because the land on which the plaintiffs resided, was under concurrent federal and state jurisdiction.  <u>Federico</u>, 901 F. Supp. 2d at 670-72.  The Court also held that federal jurisdiction was strengthened because the "case implicate[d] substantial federal interests." <u>Id.</u> at 673.  The Court

/ / /

/ / /

specifically found that "a review of the Complaint, the facts, the parties, and the nature of the public-private venture reveal that almost everything in this case implicates the United States Navy in one form or another."  Id.

15.     This case is nearly identical to Federico.  Yet, this case actually presents a stronger case for removal because this property is exclusively federal property, while Federico removed a matter involving concurrent jurisdiction. In both cases, the events at issue arose on a federal enclave owned by the Navy.  In Federico, the defendants were Lincoln Military Housing LLC, Mid-Atlantic Military Family Communities, LLC, and Lincoln Property Company Property Management, Inc.  Like Camp Pendleton Quantico Housing, LLC (and San Diego Family Housing, LLC) here, Mid-Atlantic Military Family Communities was the public-private venture ("PPV") for the development and management of multi-family housing for the Navy.  Like Lincoln Military Property Management LP here, Lincoln Property Company Property Management was the property management company retained by the PPV entity.  Federico, 901 F. Supp. 2d at 656.

16.     In addition, the same "substantial federal interests" found in Federico are present here.  This case concerns military housing operated under the Military Housing Private Initiative adopted by Congress in 1996 to improve the quality of service members' housing.  10 U.S.C. §§ 2871-85.  Under the Initiative, various branches of the Armed Forces have established PPVs to own, develop and manage military housing.  Typically, the military leases land to a private entity selected through a competitive bidding process and enters into a PPV agreement with a branch of the Armed Forces to develop and manage the military housing on it. Service members who reside in the housing receive a Basic Allowance for Housing from the military to pay their rent.  As the Federico court found, the Navy

///

///

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1  exercises significant control and involvement in the operation of the PPV and

2  management of these properties.  901 F. Supp. 2d at 673 (explaining how the Navy

3  "plays a significant role in the operation" of the PPV).

4      17.    As in the Federico case, removal of this action is proper based on this

5  Court's federal question jurisdiction under 28 U.S.C. § 1331. Both Defendant

6  Camp Pendleton & Quantico Housing, LLC and San Diego Family Housing, LLC

7  are PPVs.   On or about August 1, 2001, the Navy and Lincoln/Clark San Diego,

8  LLC entered into an Operating Agreement ("Operating Agreement") to form San

9  Diego Family Housing, LLC.  On or about August 1, 2001, the Navy and Hunt

10  Lincoln Clark Family Communities, LLC entered into a separate operating

11  agreement to form Camp Pendleton & Quantico Housing, LLC.  Camp Pendleton

12  & Quantico Housing LLC and San Diego Family Housing, LLC, both PPVs, have

13  primary responsibility for managing the military housing in their jurisdictions,

14  though important actions (including capital upgrades to the properties) cannot be

15  undertaken without the Navy's consent.

16      18.    There are other key agreements between and among the Navy and

17  certain of the Defendants.  On or about August 1, 2001, the Navy and San Diego

18  Family Housing, LLC entered a fifty-year ground lease (the "Ground Lease") for

19  the Miramar Townhomes neighborhood and certain other military housing

20  communities in the San Diego area.  On or about August 1, 2001, the Navy and

21  Camp Pendleton & Quantico Housing LLC also entered a fifty-year ground lease

22  for various military housing in the San Diego area, albeit not that which

23  encompasses the Subject Property.

24      19.    Pursuant to the Operating Agreement, PPV San Diego Family

25  Housing, LLC entered into a property management agreement ("Property

26  Management Agreement") with Defendant Lincoln Military Property

27  Management, LP, relating to the Miramar Townhomes community which

28  encompasses the Subject Property.  Under the terms of the Property Management

NOTICE OF REMOVAL

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1   Agreement, Lincoln Military Property Management, LP acts as an agent of the

2   PPV San Diego Family Housing LLC in performing certain property management

3   functions, such as property leasing.  Pursuant to a separate Operating Agreement,

4   Camp Pendleton & Quantico Housing, LLC entered into a property management

5   agreement with Defendant LPC Pendleton Quantico PM LP, albeit relating to

6   different military housing.   LPC Pendleton Quantico PM LP acts as an agent of

7   the PPV Camp Pendleton & Quantico Housing LLC under the terms of that

8   property management agreement.

9          20.     Under the terms of the Ground Lease and Operating Agreement

10   relating to the Subject Property, the Navy retained ownership of the land on which

11   the Miramar Townhomes community is located and conveyed ownership of the

12   improvements located on the land to the lessee under the Ground Lease for the

13   term of the Ground Lease.  Upon termination of the Ground Lease, all

14   improvements on the land will be abandoned in place and become the property of

15   the Navy as the fee owner of the land.

16          21.     The Operating Agreement and Ground Lease specifies that the land

17   and housing units on it must be used for the governmental purpose of housing

18   military service members and their families.  The PPV and Lincoln Military

19   Property Management, LP, as the property manager, must offer the housing units

20   first to military service members and their families, and then to Preferred Referrals

21   who work for the Department of Defense, before allowing any civilian to lease a

22   housing unit.  The Complaint names as Defendants Camp Pendleton & Quantico

23   Housing, LLC, a PPV entity in which the Navy has an ownership interest, LPC

24   Pendleton Quantico PM, LP, the agent that performs certain property management

25   functions for this PPV pursuant to a property management agreement, and Lincoln

26   Military Property Management, LP, the agent that performs certain property

27   management functions for PPV San Diego Family Housing LLC pursuant to a

28   Property Management Agreement.  While San Diego Family Housing LLC is not

-10-

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

named, this is also a PPV entity in which the Navy has an ownership interest, which is the PPV that directly relates to the Subject Property and which Defendants contend is the appropriate PPV at issue for this litigation.

22.     These claims belong in federal court because the federal government has a strong interest in and will be impacted by the claims in this case.  The Enclave Clause of the United States Constitution is a recognition by the Framers that there are some properties in which the federal government has particularly strong interests vis-à-vis the states.  By its terms, the Enclave Clause applies to lands acquired with the states' consent "for the Erection of Forts, Magazines, Arsenals, Dock-Yards, and other needful Buildings."  U.S. Const. Art. I § 8 cl. 17.  The federal government had and has strong interests in the capital and the installations that it uses to provide for the common defense.  Plaintiffs' allegations and claims concerning events on a federal enclave, raises the very interests sought to be protected by the Enclave Clause.  Federico, 901 F.Supp.2d at 673-74.

23.     The Navy has contractual obligations and proprietary and financial interests that would be affected by the claims and allegations in this case.  The case also may affect the public-private venture agreements that have been adopted by the Navy and implemented by PPVs throughout the country.  In these circumstances, the federal government undoubtedly has a substantial interest in the resolution of the claims raised in this suit.  See Federico, 901 F. Supp. 2d at 673 (finding that "[a] review of the Complaint, the facts, the parties, and the nature of the public-private venture reveal that almost everything in this case implicates the United States Navy in one form or another.").  Cf. Nicodemus v. Union Pacific Corp., 440 F.3d 1227, 1236 (10th Cir. 2006) (finding substantial federal interest in land dispute when, as here, federal government had reversionary interest in the land); McMahon v. Presidential Airways, Inc., 410 F. Supp. 2d 1189, 1201 (M.D. Fla. 2006) (finding federal question jurisdiction because case involved federal procurement contract regarding military operations in Afghanistan; "issues

1   involving a government contract and United States military operations are

2   implicated, and substantial contested federal issues are apparent").[1]

3       24.    Because Plaintiffs' claims are based on alleged acts that occurred on a

4   federal enclave and because the federal government has a substantial interest in

5   that enclave and the claims arising on it, this Court has jurisdiction to hear this

6   controversy pursuant to 28 U.S.C. § 1331.

7       25.    Removal is also appropriate under 28 U.S.C. § 1442(a)(1).  The

8   federal officer removal statute authorizes "[t]he United States or any agency

9   thereof or any officer (or any person acting under that officer) of the United States

10   or of any agency thereof, sued in an official or individual capacity for any act

11   under color of such office" to remove a civil action commenced in state court to

12   federal court in the district in which the case in currently pending.  28 U.S.C. §

13   1442(a).

14       26.    The federal officer removal statute authorizes "removal of an entire

15   case, even though only one of its controversies [or defendants] might involve a

16   federal officer or agency."  Alsup v. 3-Day Blinds, Inc., 435 F. Supp. 2d 838,

17   844 (S.D. Ill. 2006); see also Morgan v. Huntington Ingalls, Inc., 879 F.3d 602 (5th

18   Cir. 2018); Savoie v. Huntington Ingalls, Inc., 817 F.3d 457, 463 (5th Cir. 2016).

19   ("[R]emoval of the entire case is appropriate so long as a single claim satisfies the

20   federal officer removal statute."). The Supreme Court has emphasized that the

21   federal officer removal statute must be liberally construed.  See Watson v. Philip

22   Morris Cos., 551 U.S. 142, 147 (2007) ("this Court has made clear that the [federal

23   officer removal] statute must be liberally construed") (internal quotation marks

24   omitted).

25   / / /

---

[1] "The imposition of liability on Government contractors will directly affect the terms of Government contracts:  either the contractor will decline to manufacture the design specified by the Government, or it will raise its price.  Either way, the interests of the United States will be directly affected."  Boyle v. United Technologies Corp., 487 U.S. 500, 507 (1988).

-12-

NOTICE OF REMOVAL

27.     Two separate bases exist for removal under § 1442(a)(1).  The first is that the PPV named as a defendant, Camp Pendleton & Quantico Housing LLC, is an agency of the United States under that provision.  Moreover, PPV San Diego Family Housing, LLC, is also an "agency" of the United States under that provision.  For purposes of the federal officer removal statute, "[t]he term 'agency' includes . . . any corporation in which the United States has a proprietary interest." 28 U.S.C. § 451.  Multiple courts, including the Ninth Circuit, have recognized that corporations that are owned in part by the government qualify as agencies under that definition.  See Acron Invs., Inc. v. Federal Sav. & Loan Ins. Corp., 363 F.2d 236, 240 (9th Cir. 1966); also Rauscher Pierce Refsnes, Inc. v. FDIC, 789 F.2d 313, 314 (5th Cir. 1986); Government Nat'l Mortg. Ass'n v. Terry, 608 F.2d 614, 620-21 (5th Cir.1979).

28.     Here, the United States has a proprietary interest in the named PPV, Camp Pendleton & Quantico Housing LLC, as well as a separate PPV at issue with the Subject Property, San Diego Family Housing, LLC.  The Navy is one of the two members of Defendant Camp Pendleton & Quantico Housing, LLC.  The Navy is also one of the two members of San Diego Family Housing, LLC, the public-private venture responsible for the Subject Property and Miramar Townhomes community.  But regardless, the named defendant Camp Pendleton & Quantico Housing, LLC is an "agency" of the United States entitled to remove this case to federal court under § 1442(a)(1).  See City of Cookeville v. Upper Cumberland Elec. Membership Corp., 484 F.3d 380, 389-90 (6th Cir. 2007).

29.     In addition, removal is proper under 28 U.S.C. § 1442(a)(1) because Defendant Lincoln Military Property Management, LP is a "person[s] acting under [a federal] officer."[2]  Courts generally analyze the question of whether a party is a "person acting under [a federal] officer" within the meaning of § 1442(a)(1) in four

---

[2] Defendants Camp Pendleton & Quantico Housing LLC and LPC Pendleton Quantico PM LP, are also persons acting under a "federal officer," but not as to the Subject Property at issue. To the extent that Plaintiffs contend that these parties did act as to the Subject Property at issue despite Defendants' claim they did not, the same analysis as to San Diego Family Housing LLC and Lincoln Military Property Management LP, also applies to these defendants.

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

steps, asking whether the defendant: (1) is a person within the meaning of the statute; (2) acted under a federal officer; (3) has performed the actions for which they are being sued under color of federal office; and (4) raises a colorable federal defense to the Plaintiffs' claims.  Jefferson Cnty. v. Acker, 527 U.S. 423, 431 (1999); Mesa v. California, 489 U.S. 121, 125 (1989); see also Aig Eur. P'ship v. McDonnell Douglas Corp., 2003 U.S. Dist. Lexis 1770 (C.D. Cal. 2003).  Each of those elements is met here.

30.    First, Lincoln Military Property Management, LP is a person within the meaning of the statute who acted under a federal officer.  Lincoln Military Property Management, LP undoubtedly qualify as a "person" within the meaning of 28 U.S.C. § 1442(a)(1).  See, e.g., 1 U.S.C. § 1 (providing that "the word[] 'person'" in "any Act of Congress" "include[s] corporations, companies, associations, firms, partnerships, societies, and joint stock companies," "unless the context indicates otherwise"); Isaacson v. Dow Chemical Co., 517 F.3d 129, 136 (2d Cir. 2008) (holding that "persons" under the statute includes corporations); Fung v. Abex Corp., 816 F. Supp. 569, 572 (N.D. Cal. 1992) (finding that corporation that built submarines under the supervision of the Navy was a person for the purposes of the federal officer removal statute).

31.    Second, Lincoln Military Property Management, LP acted under a federal officer.  In Watson, the Supreme Court explained that an entity "acts under" a federal officer when it "assist[s], or help[s] carry out, the duties or tasks of the federal superior."  551 U.S. at 152; see also id. at 151 ("the removal statute applies to private persons who lawfully assist [a] federal officer in the performance of his official duty") (internal quotation marks omitted).  Following Watson's guidance, the Second Circuit held that a chemical company was "acting under" a federal officer for the purposes of removal when it "contracted with the Government to provide a product that the Government was using during war – a product that, in the absence of Defendants, the Government would have had to

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

NOTICE OF REMOVAL

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1  produce itself." Isaacson, 517 F.3d at 137.  The Ninth Circuit, and this Court, have

2  similarly recognized that the acting-under requirement is met where a government

3  contractor is acting at the direction of a federal agent or officer, and that no special

4  additional requirements exist to assert this defense.  Durham, 445 F.3d at 1251;

5  Willis v. Buffalo Pumps, Inc., 2013 U.S. Dist. Lexis 46242, **8-9 (S.D. Cal. Mar.

6  29, 2013).  Likewise, the Sixth Circuit held that a government contractor acted

7  under federal officers when it performed a contract to remove allegedly hazardous

8  mold from a government building – a service that the government otherwise

9  "'would have had to perform'" itself.  Bennett v. MIS Corp., 607 F.3d 1076, 1088

10  (6th Cir. 2010) (quoting Watson, 551 U.S. at 154).

11       32.     Just like the defendants in Isaacson, Durham, Willis v. Buffalo

12  Pumps, and Bennett, Lincoln Military Property Management, LP "act[ed] under"

13  officers of the Navy.  Pursuant to Congressional authorization, see 10 U.S.C.

14  §§ 2872, 2874-75, the Navy formed and invested in San Diego Family Housing,

15  LLC, which in turn hired Lincoln Military Property Management, LP to manage

16  the Subject Property.  The Navy also leased the land at issue to San Diego Family

17  Housing LLC, and continues to own that land which comprises the Subject

18  Property. (DeHart Decl., ¶¶6-11; Exhs. 1-3, 5-7).  These actions were undertaken

19  to fulfill the governmental function of housing military service members and their

20  families.  The Navy would have had to manage and maintain the Plaintiffs' home

21  had it not created the PPV, San Diego Family Housing, LLC, and hired Lincoln

22  Military Property Management, LP to perform these services.  As a result, as in

23  Watson, Lincoln Military Property Management, LP "acted under" the Navy by

24  "helping and assisting" the Navy carry out its own duties and functions.

25       33.     Third, Lincoln Military Property Management, LP performed the

26  alleged actions for which they are being sued under the color of federal office.  The

27  "hurdle erected by" the "under color of office" requirement "is quite low."

28  Isaacson, 517 F.3d at 137.  To satisfy that requirement, "Defendants must only

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1   establish that the act that is the subject of Plaintiffs' attack . . . occurred while

2   Defendants were performing their official duties." Id. at 137-38.  For example, in

3   Bennett, air traffic controllers brought personal injury actions in state court against

4   private mold remediation firms hired by the Federal Aviation Administration

5   ("FAA"), claiming that they had caused cross-contamination of their workplace.

6   607 F.3d at 1082.  One of the mold remediation firms removed the claims against it

7   to federal court on the basis of the federal officer removal statute. Id. at 1084.  The

8   court found that the firm had worked under the color of federal office because it

9   performed the work at the direction of the FAA under its contract. Id. at 1091.

10   The court also found that "even if plaintiffs were able to demonstrate that the

11   alleged cross-contamination occurred because of an act not contemplated by [the

12   mold remediation firm's] contracts with the FAA, it is sufficient for our purposes

13   that [the mold remediation firm's] execution of the FAA contracts gave rise to the

14   alleged cross-contamination." Id. at 1088; accord Isaacson, 517 F.3d at 138 ("even

15   if Plaintiffs were to prove that the [allegedly tortious conduct] occurred because of

16   an act not specifically contemplated by the government contract, it is enough that

17   the contracts gave rise to the [conduct]").  Moreover, the court noted that whether

18   the acts were outside the scope of mold remediation firm's official duties or

19   whether it was directed by the FAA was a question that the federal court should

20   resolve rather than the state court.  Bennett, 607 F.3d at 1088.

21        34.     In this case, assuming the acts alleged in the Complaint are true, the

22   alleged bodily injuries and property damage arose from Lincoln Military Property

23   Management, LP's performance of its duties to the Navy under the Operating

24   Agreement and Property Management Agreement.  Because all of the conduct

25   alleged in the Complaint "occurred while [the PPV and Lincoln Military Property

26   Management, LP] were performing their official duties" pursuant to agreements

27   with the Navy, Isaacson, 517 F.3d at 137-38, the "under color of office"

28   requirement is met here.  See also Corley v. Long-Lewis, Inc., 688 F. Supp. 2d

-16-

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1315, 1334-35 (N.D. Ala. 2010) ("All a defendant needs to do to show a causal nexus is to establish that the plaintiff's claims arise from the defendants' performance of their duties under their contract with the Navy.").

35.     Fourth, Lincoln Military Property Management, LP (as well as San Diego Family Housing LLC, should it be named) has two colorable federal defenses: (1) the government contractor defense; and (2) the derivative sovereign immunity defense.  As the Supreme Court has noted, for the purposes of removal under 28 U.S.C. § 1442, a defendant need not show that the defense is meritorious, but rather that it has plausible grounds for the defense.  See Mesa v. California, 489 U.S. 121, 128-29 (1989); see also Ellis v. Pneumo Abex Corp., 798 F. Supp. 2d 985, 990 (C.D. Ill. 2011) (finding that it is not the court's role "to consider the merits of the defense or its probability of success" only whether the defense is "plausible"); Bennett, 607 F.3d at 1090-91 (same); Isaacson, 517 F.3d at 139 (same).

36.     Under the government contractor defense, a defendant is not liable for alleged tortious conduct if: (1) the government approved reasonably precise specifications and procedures; (2) defendants conformed to those specifications and procedures; and (3) the defendants warned the government of risks of which the government was unaware.  Boyle v. United Technologies Corp., 487 U.S. 500 (1988).  The government contractor defense applies here because San Diego Family Housing, LLC and Lincoln Military Property Management, LP discharged their duties relating to the housing in the Miramar Townhomes neighborhood in accordance with the "reasonably precise standards" in both the Operating Agreement and the Property Management Agreement.

37.     In addition, Lincoln Military Property Management, LP (and San Diego Family Housing, LLC, should it be named) can assert a colorable federal defense based on derivative sovereign immunity.  Under this defense, a contractor performing at the direction and authorization of a government officer is immune

-17-

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1   from suit based upon performance of a contract.  See Yearsley v. W.A. Ross
2   Construction Co., 309 U.S. 18 (1940) ("if this authority to carry out the project was
3   validly conferred, that is, if what was done within the constitutional power of
4   Congress, there is no liability on the part of the contractor for executing its will.").
5   To this end, in denying the plaintiffs' motion to remand, the court in Federico
6   found that the Navy had "meaningful control over the operations of [the PPV]
7   Mid-Atlantic and the management of housing communities formerly run
8   exclusively by the Navy.  The agreements governing Mid-Atlantic make it clear
9   that the Navy exercises control and influence over the policies and procedures
10  concerning military housing in the enclave." Federico, 901 F. Supp. 2d at 674.
11  This defense applies here because the acts about which Plaintiffs complain were
12  performed by Lincoln Military Property Management, LP (and San Diego Family
13  Housing, LLC) in accordance with the terms of a contract with the Navy.  San
14  Diego Family Housing LLC, the PPV at issue, as well as Camp Pendleton &
15  Quantico Housing, LLC, the named PPV, were formed by the Navy pursuant to
16  congressional authorization under the Military Housing Privatization Initiative.  If
17  the Navy had performed the acts alleged in the Complaint directly, it would be
18  immune from suit.  See, e.g., Mangold v. Analytic Servs., 77 F.3d 1442, 1448 (4th
19  Cir.1996) (noting that contractors acting on behalf of federal officials "exercising
20  discretion while acting within the scope of their employment" have "absolute
21  immunity from state law tort liability" because imposing state tort liability would
22  "impair the willingness of contractors to bid on government contracts and hamper
23  the government's ability to operate efficiently") (citing Barr v. Matteo, 360 U.S.
24  564, 569-73 (1959)); Myers v. United States, 323 F.2d 580, 583 (9th Cir. 1963)
25  ("To the extent that the work performed by [the defendant] was done under its
26  contract with the Bureau of Public Lands, and in conformity with the terms of said
27  contract, no liability can be imposed upon it for any damages claimed to have been
28  suffered by the appellants."); TWI v. CACI Int'l, Inc., 2007 WL 3376661, at *3

-18-

(E.D. Va. Nov. 9, 2007) (finding defendant that secured and facilitated solicitations on behalf of the government was "immune from state tort liability for discretionary actions performed within the scope of employment"); Green v. ICI Am., Inc., 362 F. Supp. 1263, 1266 (E.D. Tenn. 1973) (defendant that contracted with the federal government to operate an ammunition plant was allowed to share sovereign immunity of the United States because plant was owned by the federal government and the products produced at it were intended for government use).

38. Defendants have timely removed this action because they filed this Notice of Removal within thirty days of being served papers in this action relating to the Complaint (albeit, an incomplete version of the Complaint). 28 U.S.C. § 1446(b)(1).

39. The Superior Court for the County of San Diego is located in the United States District Court for the Southern District of California. Accordingly, this Court is the proper Court to which to remove this action.

40. Pursuant to 28 U.S.C. § 1446(a), Defendants are required to attach to this Notice "a copy of all process, pleadings, and orders served upon" them. Accordingly, Defendants attach as Exhibit A to this Notice, the Summons(es), incomplete copy of the Complaint, Application and Order for Appointment of Guardian ad Litem, and Application and Order to Proceed under a Pseudonym, filed in San Diego County Superior Court as served upon them, and as Exhibit B, a full version of Plaintiffs' Complaint obtained from the Superior Court website.

41. The Defendants all join in and consent to this removal.

42. A copy of the written notice required by 28 U.S.C. § 1446(d) addressed to Plaintiffs' counsel and to the Clerk of the Superior Court for the County of San Diego is attached as Exhibit C to this Notice of Removal. It will be filed with that Clerk and, along with this Notice of Removal, will be served on Plaintiffs after the filing of this Notice of Removal.

/ / /

1    WHEREFORE, Defendants hereby remove the pending state court action to

2  the United States District Court for the Southern District of California pursuant to

3  28 U.S.C. §§1331, 1441, 1442 and 1446.

4                                    Respectfully Submitted,

5  Dated:  February 5, 2020        GORDON REES SCULLY MANSUKHANI, LLP

6                                    By:  /s/ Kristin N. Reyna DeHart

7                                          Kristin N. Reyna DeHart
                                          Robert J. Olson
8                                          Attorneys for Defendants Camp Pendleton &
                                          Quantico Housing, LLC; LPC Pendleton
9                                          Quantico PM LP; and Lincoln Military
                                          Property Management LP
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-20-
NOTICE OF REMOVAL

**Gordon Rees Scully Mansukhani, LLP**
**101 W. Broadway, Suite 2000**
**San Diego, CA 92101**