UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE, an individual; JANE DOE, an individual; JOHN DOE 1, a minor, by and through his guardian ad litem, JANE DOE; JOHN DOE 2, a minor, by and through his guardian ad litem, JANE DOE,<br><br>                        Plaintiff,<br>v.<br><br>CAMP PENDLETON & QUANTICO HOUSING LLC, a Delaware limited liability company; LPC PENDLETON QUANTICO PM LP, a Delaware limited partnership; LINCOLN MILITARY PROPERTY MANAGEMENT, LP, a Delaware limited partnership; and DOES 1 through 50, inclusive,<br><br>                        Defendants. | Case No.:  20-cv-224-GPC-AHG<br><br>**ORDER DENYING MOTION TO REMAND; GRANTING MOTION TO DISMISS; GRANTING MOTION TO SEAL**<br><br>**[ECF Nos. 10, 13, 16]** |

/ / /

/ / /

/ / /

1

Before the Court is Defendants Camp Pendleton & Quantico Housing LLC, LPC Pendleton Quantico PM LP, and Lincoln Military Property Management LP (collectively, "Defendants") motion to dismiss (ECF No. 10). Plaintiffs filed an opposition to the motion to dismiss on March 5, 2020. ECF No. 15. Defendants filed a reply on March 13, 2020. ECF No. 20.

Plaintiffs' motion to remand (ECF No. 13) is also before the Court. Defendants filed an opposition on March 6, 2020 (ECF No. 17) and a motion to seal in support of their motion (ECF No. 16). Plaintiffs filed a reply on March 11, 2020. ECF No. 19.

## FACTUAL BACKGROUND

On December 10, 2019, Plaintiffs John Doe, Jane Doe, John Doe 1, a minor, by and through his guardian ad litem, Jane Doe, and John Doe 2, a minor, by and through his guardian ad litem, Jane Doe ("Plaintiffs") filed the Complaint with the San Diego County Superior Court, Case Number 37-2019-00066467-CU-PO- CTL ("Underlying Action"). In the Complaint, Plaintiffs allege that Defendants Camp Pendleton & Quantico Housing LLC ("CPQH") and LPC Pendleton Quantico PM LP ("LPC Pendleton") were involved in the ownership, management, leasing, maintenance or repairs of a property located at 1582 Black Eagle Dr., Apt. D, San Diego, CA 92123 ("Subject Property"). ECF No. 1, Ex. A ("Compl.") ¶¶ 1, 7, 8. Defendant CPQH disputes any role in owning, managing or leasing the Subject Property. ECF No. 1 ¶ 2. LPC Pendleton is an agent that performs certain property management functions for CPQH. ECF No. 1 ¶ 21. Defendant Lincoln Military Property Management LP is the property manager of the Subject Property. ECF No. 1 ¶ 4.

Defendants filed the Notice of Removal in this instant action on February 5, 2020. ECF No. 1. Defendants allege that they were served with an incomplete copy of the Complaint on January 6, 2020. ECF No. 1 ¶ 1.

Plaintiffs are individuals who lived at and occupied the Subject Property as tenants from January 1, 2019 to October 29, 2019. Compl. ¶¶ 1-5, 12. Plaintiffs allege that

within the first week of moving into the Subject Property, they notified Defendants that a "strong scent of mildew" existed at the Subject Property and that items within the apartment would become moldy "at an alarming rate." *Id.* ¶ 16. Defendants told Plaintiffs to buy a de-humidifier, which Plaintiffs did at their own cost. *Id.* ¶¶ 18, 19. After two weeks, John Doe 1 and John Doe 2 developed signs of illness, including wet coughs, eye infections, sinus infections, lethargy, and shortness of breath, and Jane Doe noticed that black mold was growing within the apartment. *Id.* ¶ 23, 24. Jane Doe contacted Defendants to notify them of the black mold, in addition to the ongoing issues with leaks, humidity, and mildew. *Id.* ¶ 25. Plaintiffs allege that Defendants' representative told Jane Doe that Defendants "don't clean mold or treat it" and told Jane Doe to clean the mold herself. *Id.* ¶ 26.

Plaintiffs further allege that Defendants failed to inspect the Subject Property between January 2019 and April 2019. *Id.* ¶ 28. In April 2019, Plaintiff John Doe returned to San Diego from a military deployment overseas. *Id.* ¶ 30. John Doe contacted Defendants to lodge a complaint about the status of the property and in response, Defendants sent a regional manager to inspect the property. *Id.* ¶ 31. Upon inspection, the regional manager told Plaintiffs that he could not smell any mold and did not conduct sampling or any further inspection of the property. *Id.* ¶ 33. The Complaint alleges that at the time of the inspection, Defendants were aware that Plaintiffs were suffering from a multitude of health issues. *Id.* ¶ 34.

On September 19, 2019, Plaintiffs were moved out of the Subject Property into a hotel, after Defendants informed Plaintiffs that they needed to replace the window in the master bedroom which had been infested with black mold. *Id.* ¶¶ 36, 38.

Between September 19, 2019 and October 8, 2019, Plaintiffs lived in hotel rooms where they allege they were exposed to dangerous chemicals, resulting in John Doe 1 and John Doe 2 breaking out in several rashes. *Id.* ¶ 42.

Upon their return to their apartment, Plaintiffs observed that the extent of repairs and alterations to the Subject Property exceeded the replacement of the window in the master bedroom, and included changes throughout the property, including the bathroom and carpets. *Id.* ¶ 45. A few days after returning to the Subject Property, John Doe 1 began developing dry skin and severe rashes, and John Doe 2's eyes became swollen shut. *Id.* ¶¶ 46, 47. Since January 1, 2019, Plaintiffs allege that they have taken John Doe 1 and John Doe 2 to the emergency room at Rady Children's Hospital three times due to their exposure to the toxic mold and other conditions stemming from Defendants' conduct. *Id.* ¶ 48. Plaintiffs further allege that as a result of Defendants' conduct, John Doe 1 was forced to miss over four weeks of school, was ultimately pulled out of school, and that his preexisting autism condition has been severely exacerbated due to his inability to attend his behavioral and speech therapy sessions. *Id.* ¶¶ 49-51.

In the Underlying Action, Plaintiffs seek damages for: (1) negligence; (2) nuisance; (3) constructive (wrongful) eviction; (4) negligent misrepresentation; (5) negligent infliction of emotional distress; (6) breach of implied warranty of habitability; (7) breach of implied covenant of quiet use and enjoyment; (8) rent abatement; (9) fraud – concealment; (10) gross negligence; (11) premises liability.

## REQUESTS FOR JUDICIAL NOTICE

In support of their motion to dismiss, Defendants request judicial notice of the Lease Agreement of the Subject Property between the Plaintiffs and San Diego Family Housing LLC pursuant to Federal Rule of Evidence 201. ECF No. 10-3, Exhibit A ("Lease Agreement"). Federal Rule of Evidence 201 provides a court may take judicial notice of a fact that is "not subject to reasonable dispute" because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Here, Plaintiff refers to the Lease Agreement throughout the Complaint (Compl. ¶¶ 11, 13, 74, 146, 149, 154 and 157) and does not dispute the Defendants' request for judicial

notice. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Accordingly, the Court **GRANTS** Defendants' request for judicial notice of the Lease Agreement.

In support of their opposition to the motion to remand, Defendants request judicial notice of the following documents: (1) County Assessor/Recorder stamped maps and ownership information relating to Marine Corps Air Station Miramar; (2) United States Marine Corps map of the "Main Station" area of Marine Corps Air Station Miramar; (3) excerpts from the Final Environmental Impact Statement for Military Family Housing in the San Diego Region; (4) excerpts from the United States Marine Corps F-35B West Coast Basing Final Environmental Impact Statement. ECF No. 17-4 ¶¶ 1-4. The four documents are "not subject to reasonable dispute," and therefore the Court **GRANTS** Defendants' request for judicial notice as to the four documents pursuant to the Federal Rule of Evidence 201.

In addition, Defendants also request judicial notice of the following facts: (1) the United States of America is the owner of the Property at issue; and (2) Marine Corps Air Station Miramar is a United States military base which is under exclusive federal legislative jurisdiction. ECF No. 17-4 ¶¶ 5, 6. The request is **DENIED** since the proposed facts are subject to "reasonable dispute" between the parties. *Lee*, 250 F.3d at 688.

## MOTION TO REMAND

Plaintiffs seek to remand the case to state court and Defendants oppose. ECF No. 19. Pursuant to 28 U.S.C. § 1441(a), a defendant may remove to federal court a claim filed in state court that could have initially been brought in federal court. 28 U.S.C. § 1441(a); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). As federal courts have limited jurisdiction, they are presumed to lack jurisdiction unless the contrary is established. *Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 968–69 (9th Cir. 1981). Removal statutes are to be strictly construed and any doubts are to be resolved in

favor of state court jurisdiction and remand. *See Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992).

Defendants filed a notice of removal of this action to this Court on the following three bases: (1) pursuant to 28 U.S.C. § 1331, because the events alleged in the Complaint occurred within a federal enclave; and under 28 U.S.C. § 1442, because (2) Defendant Camp Pendleton & Quantico Housing LLC is a federal agency (moreover, San Diego Family Housing, LLC, the actual ground lessor, although not presently named, is also federal agency); (3) at all relevant times Lincoln Military Property Management LP was acting under a federal officer. ECF No. 1. Plaintiff counters on all three bases. The Court addresses each of the three bases in turn.[1]

## I. Federal Enclave – 28 U.S.C. § 1331

Defendants argue that this Court has jurisdiction on the basis of federal question jurisdiction under 28 U.S.C. § 1331 since the events upon which Plaintiffs' claims are founded occurred within federal property. ECF No. 1 ¶ 10. Plaintiffs counter that neither the Subject Property nor the surrounding property qualifies as a federal enclave.

---

[1] In support of their opposition to the motion to remand (ECF No. 17), Defendants seek to file under seal (1) the Fourth Amended and Restate Limited Liability Operating Agreement of San Diego Family Housing, LLC ("Operating Agreement"), (2) the Third Amended and Restated Real Estate Ground Lease between the United States of America, Department of the Navy and San Diego Family Housing, LLC ("Ground Lease"), (3) the Fourth Amended and Restated Property Management Agreement between San Diego Family Housing, LLC and Lincoln Military Property Management LP ("Property Management Agreement"); and (4) the Water Intrusion/Mold Operations and Maintenance Management System ("Mold O&M Plan"). ECF No. 16. The documents are filed as Exhibits B, C, D, and E, respectively, to the Declaration of Philip Rizzo (ECF No. 17-1). ECF No. 18. Defendants argue that these documents must be sealed given the confidential information contained therein related to the proprietary business operations of the federal government that disclose how these businesses are "structured and run, and how they are financed, and how they execute on their government contracts." ECF No. 16-1 at 7-8. Plaintiffs do not oppose. A party seeking to seal a judicial record must overcome the presumption of access "by demonstrating compelling reasons for sealing the document." *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) (licensing agreement merited sealing to protect confidential and commercially sensitive information). Here, Defendants have shown that there is a "compelling reason" to seal these documents and protect the proprietary business information. The motion to seal is therefore **GRANTED**.

### a. Legal Standard

Article I, section 8, clause 17 of the United States Constitution provides in relevant part that "Congress shall have the power . . . to exercise exclusive Legislation . . . over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, Dock-Yards, and other needful Buildings." U.S. Const., Art. I § 8, cl. 17.  A federal enclave is created where the federal government acquires land by purchase or condemnation with the consent of the state or commonwealth in which the land is located.  *See Humble Pipe Line v. Waggonner*, 376 U.S. 369, 371-72 (1964).  Federal enclaves include "numerous military bases, federal facilities, and even some national forests and parks."  *Azhocar v. Coastal Marine Servs., Inc.,* 2013 WL 2177784 (S.D. Cal. May 20, 2013) (citing *Allison v. Boeing Laser Technical Servs.,* 689 F.3d 1234, 1235 (10th Cir. 2012); *see also* U.S. Const. art. I, § 8, cl. 1).  The Act of October 9, 1940, 40 U.S.C. § 255 (re-codified as 40 U.S.C. § 3112), provides that as of date of its enactment, United States agencies and authorities may accept exclusive or partial jurisdiction over lands acquired by the United States by filing a notice with the Governor of the state on which the land is located or by taking other similar appropriate action.  *Adams v. United States*, 319 U.S. 312, 313 (1943).

The parties dispute whether the Subject Property sits in a federal enclave. Plaintiffs argue that since the land on which the Subject Property sits was acquired by the federal government after 1940, Defendants must show that the federal government accepted jurisdiction by filing notice of acceptance pursuant to 40 U.S.C. § 3112(b) (2006).  Defendants counter that the land was purchased by the federal government in 1931, not after 1940, and that notice of acceptance is unnecessary. The Court agrees with Defendants.

### a. MCAS Miramar

The parties disagree as to the history of the federal ownership of Marine Corps. Air Station Miramar ("MCAS Miramar") (former Miramar Naval Air Station).

Defendants claim that since the Subject Property is within the jurisdictional bounds of MCAS Miramar, it is owned by the federal government – specifically, the Department of the Navy ("Navy").[2]  ECF No. 1 ¶ 10.  Defendants allege that the Subject Property and surrounding properties were ceded from Mexico to the United States through the Treaty of Guadalupe Hidalgo of 1848, and that the State of California subsequently ceded to the federal government exclusive jurisdiction over all lands used for military purposes through the California Statutes of 1897.  ECF No. 1 ¶ 11.  Defendants therefore conclude that the land is a federal enclave, since there has been no retrocession of this portion of MCAS Miramar to the State of California.  ECF No. 1 ¶ 11.  Plaintiffs counter that the land constituting MCAS Miramar was privately owned when the California Statute of 1897 was enacted and was only converted to a military base around 1917 when it was leased to the federal government and was not acquired by the federal until the 1940s.  ECF 13-1 at 4.  Plaintiffs argue that Defendants must prove that the federal government accepted jurisdiction over the property by filing a "notice of acceptance" per the requirements of 40 U.S.C. § 3112(b).  ECF 13-1 at 4.

Both parties refer to the Historical Overview of Marine Corps Air Station, Miramar, San Diego, California, which documents the historical development of the area "that is now within Marine Corps Air Station (MCAS) Miramar."  ECF No. 13-3 at 6.  Plaintiffs cite ECF No. 13-3 at 39 in arguing that the federal government did not acquire the property until 1940s.  However, as Defendants note, Plaintiffs cite a section of the report that describe the "six satellite camps" that were established around the relevant property, rather than property itself.  ECF No. 13-3 at 39.  Instead, the historical record shows that the Department of the Navy purchased Camp Kearny, "the land that ultimately became MCAS Miramar," in February 1931.  ECF No. 13-3 at 46.  In 1917, the War Department leased Camp Kearny, (ECF No. 13-3 at 29), and while most of the Camp's

---

[2] The Subject Property is located in the Miramar Townhomes neighborhood.  ECF No. 1 ¶ 10.

buildings were destroyed or salvaged in the 1920s, (ECF No. 13-3 at 35), the property continued to be used by the Marines through the 1930s. ECF No. 13-3 at 36.

Through execution of the Ground Lease, the United States Navy retained ownership of the land where the Subject Property sits. ECF No. 17-1 ¶ 12. The Operating Agreement and Ground Lease specify that the land and housing units on it must be used for the governmental purpose of housing military service members and their families. *Id.* ¶ 13.

Since the federal government purchased the property in 1931, the "notice of acceptance" requirement as set forth by 40 U.S.C. § 3112(b) cited by Plaintiffs is inapplicable. *See generally Markham v. United States*, 215 F.2d 56 (4th Cir. 1954) (the statutory requirement of filing a notice of acceptance filed was inapplicable to land acquired prior to enactment of the statute).

Since 40 U.S.C. § 3112(b) (formerly 40 U.S.C. § 255) was amended to include this requirement in 1940, this requirement applies only to lands thereafter acquired. Defendants have sufficiently established that the federal government purchased MCAS Miramar in 1931 and therefore exercises ownership over the property to meet the requirements of federal jurisdiction. *Humble Pipe Line*, 376 U.S. at 371-72. And since neither party disputes that the relevant "pertinent events" took place on the Subject Property, the Court therefore finds that the claim properly arises on a federal enclave. *Rosseter*, 2009 WL 210452 at *2.

Plaintiffs argue that the Subject Property itself cannot be considered part of a federal enclave since it is not a "needful building," citing *Johnson v. Morrill*, 20 Cal. 2d 446, 451 (1942). ECF No. 13-1 at 4. In *Johnson*, the court held that since the property at issue was merely leased to the Navy Department, the federal government was "expressly accepted for exclusive jurisdiction by the United States by the filing of any notice of acceptance of exclusive jurisdiction" pursuant to 40 U.S.C. § 3112(b). *Id.* at 450. However, as discussed above, the statutory presumption against acceptance of

jurisdiction over land acquired by government in absence of a notice of such acceptance is inapplicable to land acquired prior to enactment of the statute. *See Markham*, 215 F.2d 56 (4th Cir. 1954). Furthermore, the *Johnson* court considered the role of the Lanham Act, which provided for the construction of housing for national defense workers, and the "express refusal in the Lanham Act to take exclusive jurisdiction" in finding that there was no federal jurisdiction. *Johnson*, 20 Cal. 2d at 453. No such analogous statute exists here. Instead, given that the Navy purchased the land on which the Subject Property sits in 1931, the Court accordingly finds that Subject Property is part a federal enclave.[3]

"Federal courts have federal question jurisdiction over tort claims that arise on 'federal enclaves.'" *Durham v. Lockheed Martin Corp.,* 445 F.3d 1247, 1250 (9th Cir. 2006). "In determining whether a claim arises on a federal enclave, courts have simply looked to see where all the 'pertinent events' took place." *Rosseter v. Industrial Light & Magic*, 2009 WL 210452, at *2 (N.D. Cal. 2009) (citing *Stiefel v. Bechtel Corp.*, 497 F. Supp. 2d 1138, 1148 (S.D. Cal 2007)). Here, all of the pertinent alleged events took place on the Subject Property and therefore, the Court finds that it properly exercises federal question jurisdiction over Plaintiffs' claims.

## MOTION TO DISMISS

### I.    Legal Standard

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990). Under Rule 8(a)(2), the plaintiff is required

---

[3] Defendants argue that removal is also appropriate under the federal officer removal statute, 28 U.S.C. § 1442(a), since (1) CPQH is a federal agency as defined by the statute; and (2) Lincoln acted under a federal officer. Since the Court has determined that it may properly exercise jurisdiction, as discussed above, the Court declines to address those arguments here.

only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint and draws all reasonable inferences in favor of the plaintiff. *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. *See Desoto*, 957 F.2d at 658; *Schreiber*, 806 F.2d at 1401.

**II.  Discussion**

Defendants move to dismiss the complaint due to Plaintiffs' failure to properly serve the Complaint; for improperly lumping allegations against all Defendants; and for failure to state a claim. ECF No. 10-1 at 3, 7, 8.

11

20-cv-224-GPC-AHG

### a. Insufficient service

Plaintiffs filed the Complaint in state court on December 10, 2019. ECF No. 1-4. On January 6, 2020, Plaintiffs served Defendants CPQH and Lincoln with the first page of the Complaint. ECF No. 15 at 2. On February 11, 2020, Defendants filed a motion to dismiss in this Court. ECF No. 3.[4] On February 13 and February 15, 2020, Plaintiffs served Defendants CPQH, LPC Pendleton, and Lincoln with full versions of the Complaint. ECF No. 15 at 3. Plaintiffs state that the initial service of process of only the first page of the Complaint was due to "unintentional clerical error," ECF No. 15 at 2, but since filing the motion to dismiss in this Court, Plaintiffs have personally served all Defendants with a full version of the Complaint; Plaintiffs have filed the relevant proofs of service. ECF No. 15-1, Exs. 4 and 5. However, Defendants allege that since they were not served with full version of Complaint within sixty days of the original filing (i.e., by February 8, 2020) the Plaintiffs violated California Rule of Court 3.110(a) and on this basis, the Complaint must be dismissed. ECF No. 10-1 at 4.

However, California Rule of Court 3.110(b) provides: "If a party fails to serve and file pleadings as required under this rule, and has not obtained an order extending time to serve its pleadings, the court may issue an order to show cause why sanctions shall not be imposed." Courts have accordingly found that "[a] plaintiff who fails to timely serve a defendant as required by California Rule of Court 3.110(b) is subject *only* to sanctions by the court." *Austin v. AstraZeneca Pharmaceuticls, LP*, 2013 WL 12142637 (C.D. Cal, 2013) (emphasis added). Therefore, the Court finds Defendants' argument unavailing and declines to dismiss the Complaint on the basis of Plaintiff's failure to comply with California Rule of Court 3.110(a).

---

[4] This motion was withdrawn on February 13, 2020 (ECF No. 9) and Defendants later filed the operative motion to dismiss on February 14, 2020. ECF No. 10.

Plaintiffs argue that pursuant to 27 U.S.C. § 1448, a plaintiff may serve process after removal within 120 days of the date of removal. ECF No. 15 at 3. The statute provides:

> In all cases removed from any State court to any district court of the United States in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court.

27 U.S.C. § 1447. Defendants contend argue that Plaintiff's February 13, 2020 and February 15, 2020 service of process violated Fed R. Civ. P. ("Rule") 4(a) since Plaintiffs did not serve Defendants with a federal court summons. ECF No. 20 at 2. The court agrees and directs Plaintiffs to effectuate service of proper federal court summons and file such proof of service with this Court.

### b. Rule 8

Defendants argue that Plaintiffs do not make any specific allegations as to each defendant and instead engaged in improper "group pleading," which is impermissible under Rule 8. Rule 8 requires that allegations be pled with sufficient specificity so as to put the opposing party on notice of the wrong they allegedly committed so that they can adequately defend themselves. *See Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (lumping together multiple defendants in one broad allegation fails to satisfy the notice requirement of Rule 8(a)(2)). The Ninth Circuit has explained that the animating feature of Rule 8 is that plaintiffs' allegations "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Here, Plaintiffs argue that they have met the Rule 8 pleading requirement since they have set forth information regarding the alleged nature of the connection between the Defendants and the connection to Plaintiffs' claims. Compl. ¶¶ 5-7; ECF No. 15 at 6.

Defendants argue that this is insufficient since Plaintiffs have failed to allege any specific action taken by any of the Defendants and have failed to allege with any specificity "which defendant did which repair, or failed to investigate, or how that repair was negligent, is not specifically explained." ECF No. 10-1 at 7.

Rule 8 requires allegations in a complaint to be specific enough to place the opposing party on notice so that they can defend themselves. Lumping multiple defendants with broad allegations does not provide such notice and is prohibited. *See Ewing v. Encor Solar, LLC*, 2019 WL 277386, at *6 (S.D. Cal. Jan. 22, 2019) (complaint did not meet Rule 8 pleading standards where plaintiff failed to differentiate the alleged wrongs amongst defendants); *Ingalls v. AMG Demolition & Envtl. Servs.*, 2018 WL 2086155, at *3 (S.D. Cal. May 4, 2018) (dismissing claim noting where it failed under Rule 8 to adequately notify defendants of the harms defendants allegedly committed); *Lopez v. Wells Fargo Bank, N.A.*, 2017 WL 1336764, at *3 (S.D. Cal. Apr. 5, 2017) (plaintiff failed to allege with sufficient specificity "as to which Defendant did what" in order to meet the Rule 8 pleading standard).

Here, Plaintiffs' allegations are broad and conclusory. They allege that they entered "into lease agreement Defendants [sic] on or around January 1, 2019." Compl. ¶ 13. However, the Lease Agreement was made between certain of the Plaintiffs and San Diego Family Housing, LLC, named as the "Owner," acting by and through its authorized agent, Lincoln. Plaintiffs allege that Plaintiffs had contact with "Defendants' designated housing representative" throughout the course of their ordeal but Plaintiffs fail to specify the representative's employer. Plaintiffs additionally allege that "Defendants informed" Plaintiffs about the need for them to move out and the status of the mold in the apartment, but Plaintiffs do not specify which Defendant. Compl. ¶¶ 36, 37. Plaintiffs only broadly allege that "Defendants were aware" of the Plaintiffs' ongoing issues. *Id.* ¶ 34. Plaintiffs' allegations about the nature of Defendants' actions – especially for CPQH

and LPC Pendleton who are not named in the Lease Agreement – are therefore unsupported by any specific factual allegations.[5]

## CONCLUSION

The motion to remand is **DENIED**. The motion to dismiss is **GRANTED**. Plaintiffs are directed to effectuate service of proper federal court summons and file such proof of service with this Court within the next 30 days. Plaintiffs are granted leave to amend within the next 30 days.

**IT IS SO ORDERED.**

Dated: April 16, 2020

Hon. Gonzalo P. Curiel
United States District Judge

---

[5] Defendants also seek to dismiss CPQH and LPC Pendleton on the basis that they are not proper defendants to this action since they are not named in the Lease Agreement. Since the Court has already granted the motion to dismiss on the grounds discussed above, the Court declines to address this argument.