1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                        SOUTHERN DISTRICT OF CALIFORNIA

10

11  JOHN DOE; JANE DOE; JOHN DOE 1,          Case No.:  3:20-cv-00224-GPC-AHG
    a minor, by and through his guardian ad
12  litem, JANE DOE; and JOHN DOE 2, a       **REPORT AND**
    minor, by and through his guardian ad    **RECOMMENDATION FOR ORDER**
13  litem JANE DOE,                          **GRANTING MINOR'S**
                                             **COMPROMISE PETITION, AS**
14                              Plaintiffs,  **AMENDED BY PLAINTIFFS'**
                                             **SUPPLEMENTAL BRIEF**
15  v.
                                             **[ECF No. 49]**
16
    LINCOLN MILITARY PROPERTY
17  MANAGEMENT LP; SAN DIEGO
    FAMILY HOUSING, LLC; and DOES 1
18  through 50, inclusive,

19                              Defendants.

20

21

22

23

24

25

26

27

28

                                        1

Before the Court is the *ex parte* petition of minor Plaintiffs John Doe 1 and John Doe 2, by and through their mother and guardian *ad litem* Jane Doe, for approval of the compromise of the minor Plaintiffs' disputed claims (the "Petition"), and the Supplemental Brief in Support of the Petition (the "Supplemental Brief"). ECF Nos. 49, 54. This Report and Recommendation is submitted to United States District Judge Gonzalo P. Curiel pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 17.1(a) of the United States District Court for the Southern District of California. After reviewing the Petition and all supporting documents, and for the reasons discussed below, the Court **RECOMMENDS** that the District Court **GRANT** the Petition, as amended by the Supplemental Brief, and in accordance with the undersigned's specific recommendations herein.

## I.    BACKGROUND

Plaintiffs John Doe 1 and John Doe 2 (the "minor Plaintiffs") are both minors appearing by and through their mother and guardian *ad litem*, Jane Doe. ECF No. 49. John Doe 1 is seven years old, and John Doe 2 is two years old. *See* ECF No. 49-1 ¶ 3. Jane Doe and Plaintiffs' father John Doe are also Plaintiffs in this action.

According to the First Amended Complaint, Plaintiff John Doe leased a property located at 1582 Black Eagle Drive, Apt. D, San Diego, CA 92123 (the "Leased Property"), and the minor Plaintiffs resided at the Leased Property at all times relevant to the complaint. ECF No. 39 ¶¶ 1, 3-4. John Doe leased the property through a lease agreement with Defendants, and Plaintiffs occupied the Leased Property during the period of January 1, 2019 to on or around October 29, 2019, when John Doe 1 was 5-6 years old and John Doe 2 was 11-19 months old. ECF No. 49-1 ¶¶ 3-4. Plaintiffs allege that the "grossly negligent maintenance of the leased property by Defendants and employees of Defendants is responsible for Plaintiffs' exposure to black mold and other toxic chemicals which negatively impacted the health and well-being of Plaintiffs." *Id.* ¶ 11. Based on these allegations, Plaintiffs brought eleven state-law claims against Defendants of negligence, nuisance, wrongful (constructive) eviction, negligent misrepresentation, negligent infliction of emotional distress, breach of implied warranty of habitability, breach of

implied covenant of quiet use and enjoyment, rent abatement, fraud, gross negligence, and premises liability. ECF No. 39 ¶¶ 54-160.

Plaintiffs allege that both John Doe 1 and John Doe 2 suffered emotional distress and severe medical issues caused and exacerbated by exposure to black mold in the Leased Property, including but not limited to wet coughs, eye infections, sinus infections, lethargy, and shortness of breath. ECF No. 49-1 ¶¶ 6, 12-13. According to Plaintiffs, as a result of these medical issues, John Doe 1 missed more than 4 weeks of school in total, and his parents "were forced to make the difficult decision of withdrawing him from school." *Id.* ¶¶ 9, 12. Plaintiffs contend John Doe 1's exposure to toxic mold also exacerbated his autism, regressing his behavioral and speech therapy progress. *Id.* ¶ 9. Plaintiffs further allege that both John Doe 1 and John Doe 2 were taken to the emergency room three times as a result of the mold exposure. *Id.* ¶¶ 8, 13. Additionally, Plaintiffs were forced to vacate their home and relocate to a hotel between September 1, 2019 and October 8, 2019 while Defendants replaced a window in the family's home due to black mold. *Id.* ¶ 7. In the complaint, Plaintiffs assert that on October 4, 2019, an employee of Defendant Lincoln Military Property Management, LP instructed them to check out of the hotel they had been staying in, and to check into another hotel on a military base where "the walls, ceiling, and carpet" of their hotel room were "caked with chemical cleaners and sprays." ECF No. 39 ¶ 44. Plaintiffs allege the minor Plaintiffs "broke out in severe rashes as a result of contact with these dangerous chemicals." *Id.*; *see also* ECF No. 49-1 ¶ 7.

The parties participated in an Early Neutral Evaluation Conference ("ENE") before the undersigned on July 15, 2020. ECF No. 48. Although the case did not settle at the ENE, the parties accepted the Mediator's Proposal issued by the undersigned after the ENE, thereby reaching a settlement agreement.

On July 22, 2020, the minor Plaintiffs, by and through their guardian *ad litem* Jane Doe, filed the instant *ex parte* petition for approval of the minors' compromise of claims, asking the Court to approve the proposed settlement in accordance with 28 U.S.C.

§ 636(b)(1), CivLR 17.1(a), Cal Civ. Proc. Code § 372, and Cal. Prob. Code §§ 3600, *et seq.* ECF No. 49.

Under the terms of the proposed settlement, Plaintiffs agreed to accept $67,500 in exchange for dismissing their claims against Defendants. ECF No. 49-1 at 4. However, Plaintiffs do not intend to split the settlement funds evenly. In the Petition, Plaintiffs proposed that 52% of the settlement funds, or $35,380.88, be distributed to John Doe 1, and that 3% of the settlement funds, or $2,079.14, be distributed to John Doe 2. *Id.* (John Doe and Jane Doe collectively would receive the remaining 45% of the settlement funds.) The Petition also provided that each Plaintiff would pay 37% of his or her gross settlement funds for attorney fees (before deducting for costs and expenses), and each Plaintiff would also pay one-quarter of the total $966.84 in costs, or $241.71.[1] *Id.*

Based on the proposed distribution in the initial Petition, John Doe 1 would receive a net total of $22,048.24 from the settlement ($35,380.88, less $13,090.93 in attorney fees and $241.71 in costs), and John Doe 2 would receive a net total of $1,068.15 from the settlement ($2,079.14, less $769.28 in attorney fees and $241.71 in costs). *Id.* Finally, Plaintiffs' counsel requested that the net settlement proceeds for the minor Plaintiffs be placed in control of their parents and legal guardians John Doe and Jane Doe. *Id.* at 5.

After reviewing the Petition, the Court determined a Fairness Hearing was necessary, because various aspects of the proposed settlement were at odds with existing state law governing the disbursement of the settlement proceeds of minor plaintiffs. *See* ECF No. 51. In particular, the Court was concerned with (1) the proposal that 37% of the

---

[1] Plaintiffs' counsel Christian Clark provided a Declaration in support of the Petition (ECF No. 49-1), in which he states the total litigation costs are $996.82, not $966.84. *Id.* at 4. However, the $241.71 amount is consistently stated throughout the Petition, Clark Declaration, and the Supplemental Brief as the amount by which each Plaintiff's settlement proceeds shall be reduced to reimburse Plaintiffs' counsel's firm for costs. *See id*; ECF No. 54. The Court will assume the $241.71 amount is accurate, rather than calculating 25% of $996.82 on its own and unilaterally reducing the minor Plaintiffs' net settlement proceeds accordingly.

minor Plaintiffs' settlement proceeds be disbursed as attorney fees, and (2) the proposal that the net settlement proceeds for the minor Plaintiffs be placed in control of their parents. The Court explained its concerns to Plaintiffs' counsel during the Fairness Hearing and ordered Plaintiffs to file a supplement to the Petition addressing these concerns. ECF No. 53. Plaintiffs' Supplemental Brief followed. ECF No. 54.

In the Supplemental Brief, Plaintiffs provide four alternative options for the disbursement of the proceeds to the minor Plaintiffs, in order of Plaintiffs' preference. *See id.* at 3-8. For the reasons explained more fully in the Discussion section, the undersigned will recommend that the Court adopt proposed Option 1 (earmarking funds to be paid to Jane Doe for reimbursement of past medical expenses), but adjust Plaintiffs' proposal to account for mathematical errors, resulting in the following distribution:

**Total Settlement Proceeds**: $67,500

- **Gross settlement amount for John Doe and Jane Doe, collectively:** $30,375 (45%)
- **Gross settlement amount for John Doe 1:** $35,100 (52%)
- **Gross settlement amount for John Doe 2:** $2,025 (3%)[2]

---

[2] In the Petition, Plaintiffs inexplicably calculate that 52% of $67,500 is $35,380.88, that 45% of $67,500 is $30,039.98, and that 3% of $67,500 is $2,079.14. ECF No. 49-1 at 4. This error is repeated in the Supplemental Brief, where John Doe 1's and John Doe 2's gross settlement amounts are stated as $35,380.88 and $2,079.14, respectively. *See generally* ECF No. 54. It is not clear to the Court what caused this discrepancy, but the figures herein were calculated based on the actual percentages of the settlement proceeds proposed to go to each Plaintiff.

**Total Attorney Fees**: $20,520 (37% of the adult Plaintiffs' gross settlement amount ($11,238.75) + 25% of John Doe 1's gross settlement amount ($8,775) + 25% of John Doe 2's gross settlement amount ($506.25))[3]

**Total Litigation Costs**: $966.84 (split four ways among Plaintiffs, for a reduction of $241.71 from each Plaintiff's gross settlement proceeds)

**Amount to be reimbursed to Jane Doe for medical expenses paid for the benefit of John Doe 1**: $6,290.00 (to be taken from John Doe 1's gross settlement amount in accordance with California Probate Code § 3601(a))

**Total Net Settlement Proceeds to Plaintiffs:** $39,723.16

- **Net settlement proceeds to be disbursed to John Doe and Jane Doe**: $18,652.83 (not including the $6,290.00 to be reimbursed to Jane Doe)
- **Net settlement proceeds to be disbursed to John Doe 1:** $19,793.29
- **Net settlement proceeds to be disbursed to John Doe 2:** $1,277.04

---

[3] In the Supplemental Brief, Plaintiffs calculated the attorney fees to be paid out of the minor Plaintiffs' settlement after deducting litigation costs from the gross settlement amounts. *See* ECF No. 54 at 8, 9. Additionally, the Supplemental Brief indicates that "the originally agreed upon rate" for attorney fees was 37.5%. *Id.* at 2, 6, 9. However, in the declaration attached to the initial Petition, Mr. Clark stated that "[t]he parties have a written contract that provides for 37% of the gross settlement for attorney's fees (before deducting for costs and expenses)." Clark Decl. ¶ 15. To resolve this apparent conflict, the Court assumes the accuracy of Mr. Clark's Declaration. Accordingly, the Court has applied a 37% rate to calculate the attorney fees to be paid out of John Doe and Jane Doe's gross settlement proceeds, and a 25% rate to each of the minor Plaintiff's gross settlement amounts, all without first deducting for costs and expenses.

As for the method of disbursement, the undersigned will further recommend that the minor Plaintiffs' net settlement proceeds be disbursed to their mother Jane Doe in accordance with California Probate Code §§ 3611(d) and (e).

## II.   LEGAL STANDARD

It is well-settled that courts have a special duty to safeguard the interests of litigants who are minors in the context of settlements proposed in civil suits. *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011); *see also* Fed. R. Civ. P. 17(c) (district courts "must appoint a guardian *ad litem*—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action."). "In the context of proposed settlements in suits involving minor plaintiffs, this special duty requires a district court to 'conduct its own inquiry to determine whether the settlement serves the best interests of the minor.'" *Robidoux*, 638 F.3d at 1181 (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978)); *see also Salmeron v. United States*, 724 F.2d 1357, 1363 (9th Cir. 1983) (holding that "a court must independently investigate and evaluate any compromise or settlement of a minor's claims to assure itself that the minor's interests are protected, even if the settlement has been recommended or negotiated by the minor's parent or guardian *ad litem*."). To facilitate courts within this district fulfilling the duty to safeguard, Local Rule 17.1(a) provides that "[n]o action by or on behalf of a minor or incompetent will be settled, compromised, voluntarily discontinued, dismissed or terminated without court order or judgment." CivLR. 17.1(a).[4]

The Ninth Circuit has established that courts reviewing the settlement of a minor's federal claim should "limit the scope of their review to the question whether the net amount

---

[4] This requires the Court to determine whether the settlement is in the best interests of the minor, by considering not only the fairness of the settlement, but the structure and manner of the plan for the payment and distribution of the assets for the benefit of the minor. Under the Local Rules, parties must submit the settlement to a magistrate judge for preliminary review of the structural components. *See* CivLR 17(a) ("All settlements and compromises must be reviewed by a magistrate judge before any order of approval shall issue.").

distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases." *Robidoux*, 638 F.3d at 1181–82. The Court should also "evaluate the fairness of each minor plaintiff's net recovery without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel—whose interests the district court has no special duty to safeguard." *Id*. at 1182 (citing *Dacanay*, 573 F.2d at 1078). "So long as the net recovery to each minor plaintiff is fair and reasonable in light of their claims and average recovery in similar cases, the district court should approve the settlement as proposed by the parties." *Robidoux*, 638 F.3d at 1182.

Significantly, the Ninth Circuit limited its decision in *Robidoux* to "cases involving the settlement of a minor's ***federal*** claims." *Id.* at 1181–82 (emphasis added). Where a settlement involves state law claims, federal courts are generally guided by state law rather than *Robidoux*. *J.T. by & Through Wolfe v. Tehachapi Unified Sch. Dist.*, No. 116CV01492DADJLT, 2019 WL 954783, at *2 (E.D. Cal. Feb. 27, 2019). *See also A.M.L. v. Cernaianu*, No. LA CV12-06082 JAK (RZx), 2014 WL 12588992, at *3 (C.D. Cal. Apr. 1, 2014) (collecting cases). The *A.M.L.* court noted that, although federal courts generally require claims by minors to "be settled in accordance with applicable state law," the Ninth Circuit in *Robidoux* held such an approach "places undue emphasis on the amount of attorney's fees provided for in a settlement, instead of focusing on the net recovery of the minor plaintiffs." *Id.* at *2 (quoting *Robidoux*, 638 F.3d at 1181) (other citation omitted). *But see Mitchell v. Riverstone Residential Grp.*, No. CIV. S-11-2202 LKK, 2013 WL 1680641, at *1 (E.D. Cal. Apr. 17, 2013) ("[A] number of district courts have applied the rule provided in *Robidoux* to evaluate the propriety of a settlement of a minor's state law claims as well") (collecting cases).

Just like federal claims, a minor's settlement of state law claims must also be approved by the Court. The California Probate Code provides the applicable statutory scheme for approval of a minor's compromise under state law. *See* Cal. Prob. Code §§ 3601 *et seq*. Under California law, the Court is tasked with evaluating the

reasonableness of the settlement and determining whether the compromise is in the best interest of the minor. *A.M.L.*, 2014 WL 12588992, at *3 (citations omitted). In carrying out that task, the Court is afforded "broad power . . . to authorize payment from the settlement—to say who and what will be paid from the minor's money—as well as direct certain individuals to pay it." *Goldberg v. Superior Court*, 23 Cal. App. 4th 1378, 1382 (Cal. Ct. App. 1994). *See also Pearson v. Superior Court*, 136 Cal. Rptr. 3d 455, 459 (Cal. Ct. App. 2012) (explaining that the purpose of requiring court approval of a minor's settlement is to "allow[] the guardians of a minor to effectively negotiate a settlement while at the same time protect[ing] the minor's interest by requiring court approval before the settlement can have a binding effect on the minor").

Because the substantive claims in this case are governed by California law, the Court will review the settlement with an eye towards the state standard, which focuses on the "best interests of the minor." However, to ensure that all potentially relevant factors are considered, the Court will also apply the *Robidoux* standard of determining whether the net amount distributed to the minor plaintiffs (without regard to the proportion of the settlement allocated to adult co-plaintiffs or attorney fees) is "fair and reasonable." *See A.M.L.*, 2014 WL 12588992, at *3 (finding it unnecessary for the court to resolve whether *Robidoux* or state rules applied to approval of minor's compromise in case involving state tort law claims, because the proposed settlement would satisfy both standards).

## III.   DISCUSSION

After the undersigned made a mediator's proposal, Plaintiffs decided to settle the case, with the understanding that if the settlement is approved by the Court, Plaintiffs will be forever barred from seeking any further recovery or compensation from Defendants on the claims that are proposed to be dismissed. The Court must now fulfill its special duty to safeguard the interests of the minor Plaintiffs in such a situation. To do so, the Court will analyze the proposed settlement, the method of disbursing the minor Plaintiffs' net recovery, and the proposed attorney fees and costs.

\\

### A.  Proposed Net Settlement Amounts for the Minor Plaintiffs

In reviewing a petition to approve a minor's compromise, "courts typically consider such information as the relative worth of the settlement amount, the circumstances of the settlement, counsel's explanation of their views and experiences in litigating these types of actions, and other, similar compromises that have been approved by courts." *J.T.*, 2019 WL 954783, at *2. Taking all relevant considerations into account, the Court finds John Doe 1's net recovery of $19,793.29 and John Doe 2's net recovery of $1,277.04 to be fair and reasonable under the circumstances.

First, the Court finds that the proposed settlement allows for the certainty of recovery for the minor Plaintiffs, as opposed to the uncertainty associated with a jury verdict. Further, having personally facilitated the ENE and fashioned the mediator's proposal that ultimately led to settlement, the undersigned is uniquely positioned to affirm that the settlement reached by the parties represents a fair outcome for both sides given the risks, uncertainties, and costs inherent in prolonged litigation, as well as the relative strengths and weaknesses of the parties' positions. This case settled early, within the first six months after filing, and before either side accrued significant fees or costs. It is the impression of the undersigned that there likely would have been issues of proof that may have hindered resolution of the case before trial absent a settlement. Even if a greater recovery might have been possible at trial, particularly in light of John Doe 1's expensive medical treatment needs, an early settlement will provide much-needed funds to the family that would not have been guaranteed otherwise. Therefore, the Court finds it is in the best interest of the minor Plaintiffs to avoid protracted litigation and the burden, expense, and uncertainty of taking the case to trial.

Although John Doe 2's portion of the settlement is quite small, only representing approximately 3% of the gross proceeds, that relatively small distribution reflects the fact that his alleged damages were minor in comparison to his older brother John Doe 1 and his parents John Doe and Jane Doe. Again, the undersigned facilitated the ENE and is thus privy to the reasons driving the settlement. John Doe 2 was an infant during the relevant

time period, while John Doe 1 was school-aged and missed a significant amount of school (ultimately having to be withdrawn altogether) as a result of his alleged injuries. Of even greater significance to the settlement was Plaintiffs' allegation that John Doe 1's mold exposure and time out of school exacerbated his autism, regressing his behavioral and speech therapy progress. Plaintiffs made no similar claims with respect to John Doe 2. As for the boys' parents, their approximately 45% share of the settlement proceeds is largely reflective of their alleged financial losses stemming from payment of rent for the subject property. Plaintiffs brought a claim for rent abatement, alleging that the fair rental value of the residence during the relevant 10-month period was $0.00 per month. *See* ECF No. 39 ¶¶ 122-34. These purported financial losses were not suffered by the minor Plaintiffs.

Second, although the Petition and Supplemental Brief do not identify any cases involving similar facts to those here, the Court has performed its own independent review and finds the proposed net settlement amounts to go to the minor Plaintiffs is in line with similar minors' compromises approved in other cases, particularly given the early stage of litigation. Specifically, the Court has reviewed settlements of claims involving both mold-related physical injuries as well as claims involving the denial or loss of vital educational services for children with disabilities, and finds that the percentages of the total settlement amount to be distributed to the minor Plaintiffs is fairly proportional to their alleged damages relative to the adult Plaintiffs. *See, e.g.*, *Armendariz v. Kittyhawk Realty, Inc.*, No. 37-2017-00016518-CU-PO-CTL, 2018 WL 8786615, at *2 (Cal. Super. May 22, 2018) and 2018 WL 8786616, at *2 (Cal. Super. May 22, 2018) (approval of gross settlement amount of $75,000 each and a net of approximately $48,000 each for two minors in a family of four out of a $300,000 settlement, where each minor plaintiff alleged physical injuries of allergic rhinitis, rhinorrhea, headaches, sinusitis, asthma, rash, and decreased appetite leading to weight loss and anemia, caused by exposure to mold and other improper conditions in the subject property); *Tran et al. v. Camden USA, Inc.*, Case No. 3:09-cv-01259-AJB, ECF No. 22 (S.D. Cal. Mar. 12, 2010) (approval of gross settlement amount of $60,000 and net settlement amount of $45,000 for a minor plaintiff in a family of three

out of a $150,000 settlement, in a case involving allegations of water damage in the plaintiffs' home that purportedly led to fungal contamination and physical injuries including allergic, irritant, and infectious responses); *K.M. v. Tehachapi Unified Sch. Dist.*, No. 115CV01835LJOJLT, 2019 WL 991048, at *2 - *5 (E.D. Cal. Feb. 28, 2019), *report and recommendation adopted*, 2019 WL 1572933 (E.D. Cal. Apr. 11, 2019) (approving a settlement involving a combination of both money and services to address deficits caused by the minor's autism and insufficient education, including $45,000 in a blocked trust account to pay for "future independent-living and educational costs [the minor] will have due to the delay in receiving appropriate intervention[,]" where the minor missed an entire year of school to receive prescribed treatment for her autism that was denied her while at school); *J.S. v. Santa Clara Cty. Office of Educ.*, No. 19-CV-06668-VKD, 2019 WL 7020321, at *1 - *2 (N.D. Cal. Dec. 20, 2019) (approving a $21,500 settlement, with net settlement proceeds of $12,500 to go to the minor and his mother to pay for trauma therapy and qualified educational expenses for the minor, where the minor had been diagnosed with autism spectrum disorder and other disorders, and where the complaint alleged that the school district had denied the minor plaintiff a free appropriate public education during the 2018-2019 school year under the Individuals with Disabilities in Education Act); *Colbey T. v. Mt. Diablo Unified Sch. Dist.*, No. C 11-03108 LB, 2012 WL 1595046, at *1-*2 (N.D. Cal. May 4, 2012) (approving a minor's compromise of civil rights, ADA, and Rehabilitation Act claims for $29,000, and allocating $28,650 to be held in a trust account for the minor plaintiff's counseling, therapy, educational, and other expenses, where the minor plaintiff alleged the school district exacerbated his diagnosed emotional and behavior disabilities rather than accommodating them); *Paul G. v. Monterey Peninsula Unified Sch. Dist.*, No. 16-CV-05582-BLF, 2020 WL 3791593, at *1-*2 (N.D. Cal. July 7, 2020) (approving disbursement of $25,000 in net settlement proceeds from a $35,000 settlement to a conserved adult with autism who alleged he had been denied an appropriate education during his final two years of high school, including no educational services whatsoever for "a few months" of his junior year).

Moreover, the Court finds Plaintiffs' proposal of setting aside $6,290 from John Doe 1's gross settlement proceeds to reimburse Jane Doe for payment of past medical expenses for John Doe 1 to be fair and reasonable. Under the California Probate Code, the Court may issue an order "authorizing and directing that reasonable expenses, medical or otherwise and including reimbursement to a parent, [] as the court shall approve and allow therein, shall be paid from the money or other property to be paid or delivered for the benefit of the minor[.]" Cal. Prob. Code § 3601. Jane Doe has declared under penalty of perjury that, since the date the family moved into the subject residence, she has incurred approximately $6,290.00 in medical expenses on behalf of John Doe 1 for his medical conditions, including treatment and therapies for his autism spectrum disorder. ECF No. 54-2 ¶ 4. Under such circumstances, the Court finds Plaintiffs' proposal of setting aside funds to reimburse Jane Doe for these past medical expenses, which were incurred solely on behalf of and for the benefit of John Doe 1, is in line with the statutory scheme designed to protect settlement proceeds belonging to minors.

Based upon a consideration of the facts, Plaintiffs' claims and asserted damages, the risks associated with trial, and the recoveries in similar actions, the undersigned **RECOMMENDS** the Court find that the proposed settlement amounts to be disbursed to John Doe 1 ($19,793.29) and John Doe 2 ($1,277.04) are fair and reasonable under both California and federal law standards.

### B. Attorney Fees and Costs

Attorney fees and costs are typically controlled by statute, local rule, or local custom. Fees in minors' cases have historically been limited to 25% of the gross recovery. In California, courts are required to approve the attorney fees to be paid for representation of a minor. *See* Cal. Prob. Code § 2601; Cal. Rule of Ct. 7.955.[5] In instances where a

---

[5] Similarly, San Diego Superior Court Civil Rule 2.4.6.2 states that, regarding a minor's compromise, "the court will determine the amount of costs, expenses, and attorney's fees

3:20-cv-00224-GPC-AHG

contingency fee has been proposed, "most courts require a showing of good cause to award more than 25% of any recovery" whereas a greater reward is "rare and justified only when counsel proves that he or she provided extraordinary services." *Schwall v. Meadow Wood Apts.*, No. CIV. S-07-0014 LKK, 2008 WL 552432, at \*1–\*2 (E.D. Cal. Feb. 27, 2008) (internal quotation marks omitted). *See also Napier v. San Diego*, No. 15-cv-581-CAB-KSC, 2017 WL 5759803, at \*9 (S.D. Cal. No. 28, 2017) ("Generally, fees in minors cases have historically been limited to 25% of the gross recovery").

In the original Petition, Plaintiffs' counsel sought 37% of the entire settlement amount (before deducting for costs and expenses), in accordance with the contingency agreement between Plaintiffs and their counsel. Clark Decl. ¶ 15. The Court set a fairness hearing in part to explain that, based on the California law discussed above, the undersigned was not inclined to recommend Court approval of such a high contingency fee in this case.

Under all four alternative options proposed for the disbursement of the settlement funds in the Supplemental Brief, Plaintiffs' counsel properly adjusted their attorney fee rate to 25% for their share of the minor Plaintiffs' settlement amounts. *See* ECF No. 54 at 4, 6, 7, 9. Given the new fee request's adherence to the historically applied limit in cases involving minors, the undersigned **RECOMMENDS** that the Court find the requested amount of attorney fees is reasonable and does not suggest that the settlement was unfair. This conclusion is especially warranted given counsel's willingness to depart significantly from the rate agreed upon in their contract with Plaintiffs.

Additionally, although this litigation was in its very early stages at the time of settlement, Plaintiffs' counsel incurred costs totaling $966.84[6] for filing suit, effectuating

---

to be allowed from the proceeds of the settlement. Absent extraordinary circumstances, attorney's fees will not exceed 25% of the gross proceeds of the settlement."

[6] Again, this number has been adjusted from $996.82 due to the mathematical discrepancies in the Petition, discussed *supra* n.1

service, printing, and other hard costs. ECF No. 49-1 at 4. The undersigned **RECOMMENDS** the Court find that these relatively minimal costs are fair and reasonable under the circumstances, and that the proposal of splitting the costs four ways among the four Plaintiffs, resulting in a deduction of only $241.71 from each Plaintiff's recovery, is also fair and reasonable.

### C. Method of Disbursement

Courts can use a wide variety of methods for the disbursement of settlement funds to a minor. *See* Cal. Prob. Code §§ 3600 *et. seq.* Here, the Court found it prudent to hold a fairness hearing in part because Plaintiffs' proposed method of disbursement to the minor Plaintiffs in the initial Petition—that the net settlement proceeds "be placed in control of their parents and legal guardians John Doe and Jane Doe"—did not specifically meet any of the statutorily approved methods of disbursement under the California Probate Code. *See* ECF No. 49-1, Clark Decl. ¶ 18; Cal. Prob. Code § 3611. Therefore, the Court required Plaintiffs to propose alternative methods of disbursement.

### i.   *Disbursement of John Doe 2's net settlement proceeds*

Although John Doe 2's net settlement amount does not exceed $5,000 and can thus be paid or delivered to his parent pursuant to § 3611(e), such payment must accord with terms and conditions set forth in Cal. Prob. Code §§ 3400, concerning money or property of a minor where the minor's total estate is not in excess of $5,000. Cal. Prob. Code § 3611(e). Pursuant to § 3401, where, as here, a minor does not have a guardian of the estate, money belonging to John Doe 2 may be paid to his parent "to be held in trust for the minor until the minor reaches majority" *if* the following requirements are met: (1) The total estate of the minor, including the money to be paid to the parent, does not exceed $5,000 in value; and (2) the parent to whom the money is to be paid or delivered gives the person making the payment or delivery written assurance, verified by the oath of such parent, that the minor's total estate (including the money to be paid to the parent) does not exceed $5,000 in value. Cal. Prob. Code § 3401(a), (c).

In their Supplemental Brief, Plaintiffs propose that John Doe 2's portion of the settlement proceeds be paid and delivered to his mother Jane Doe in accordance with these provisions, and that Jane Doe agrees to proceed under these provisions. ECF No. 54 at 9. The Court finds that this method of disbursement of John Doe 2's funds is fair, reasonable, in the best interest of the two-year-old child, and within the bounds of applicable law. However, despite the statement in the Petition that Jane Doe agrees to proceed under these provisions, it is unclear whether Jane Doe has actually provided the required written assurance, verified by her oath, that John Doe 2's total estate does not exceed $5,000, as required by Cal. Prob. Code § 3401. Accordingly, the undersigned **RECOMMENDS** that the Court approve the disbursement of John Doe 2's net recovery of $1,378.07 to his mother, Jane Doe, *if and only if* she provides such verified written assurance to Defendants and files a copy of the same with the Court.

ii.    *Disbursement of John Doe 1's net settlement proceeds*

As noted above, Plaintiffs propose four alternative options for the disbursement of John Doe 1's net settlement proceeds in their Supplemental Brief, in order of Plaintiffs' preference. Upon thorough consideration, the undersigned recommends that the Court adopt Plaintiffs' proposed Option 1 in part and reject it in part, by adjusting the proposal to account for mathematical errors. However, before turning to Option 1, the undersigned will briefly describe all of the options provided in the Supplemental Brief.

Under Option 1, Plaintiffs propose John Doe 1 receive the same gross settlement amount as provided in the original Petition: $35,380.88. ECF No. 54 at 4. But in a departure from the Petition, $6,290.00 would be deducted from the gross amount to reimburse Jane Doe for medical expenses incurred for John Doe 1's benefit during the relevant time period. The other salient departure from the disbursement proposed in the Petition is that $64.39 of John Doe 1's net recovery would be deposited in an insured account or a single-premium deferred annuity, subject to withdrawal only upon authorization of the Court (referred to by Plaintiffs as a "blocked account"), pursuant to Cal. Prob. Code § 3611(b). *Id.* Per Plaintiffs' calculations, deducting that $64.39 from John Doe 1's net recovery would

reduce it to $19,999—just below the $20,000 limit of Cal. Prob. Code § 3611(d), which allows a minor's net recovery to "be held on any other conditions the court in its discretion determines to be in the best interest of the minor" if the remaining balance of the money is less than $20,000. *Id.* Therefore, under Option 1 as described by Plaintiffs, the Court would split John Doe 1's net recovery into two portions, so that one portion would become eligible to be distributed to John Doe 1's parents at the Court's discretion under § 3611(d).

Option 2 asks that the Court restructure the settlement agreement to allot a larger portion of the settlement to Jane Doe. Under this option, instead of John Doe 1 receiving 52% of the total settlement amount as proposed in the Petition, he would receive only $6,908.00 as a gross settlement amount, and $4,999.72 as his net recovery. (Under this proposal, the attorney fees would be adjusted such that Plaintiffs' counsel would still receive only 25% of John Doe 1's originally agreed upon share of the settlement, to prevent Plaintiffs' counsel from benefiting from the restructuring proposal). ECF No. 54 at 5-6.

Under Option 3, like Option 1, Jane Doe would be reimbursed $6,290.00 from John Doe 1's gross settlement amount, but instead of splitting John Doe 1's net recovery into two portions, John Doe 1's net recovery of $20,064.38 would instead be deposited in a "blocked account" pursuant to Cal. Prob. Code § 3611(b). ECF No. 54 at 6-8. Plaintiffs find this option less desirable than Options 1 and 2, because it "may significantly burden Jane Doe's ability to use funds obtained in this lawsuit to assist with payment of John Doe 1's costly autism treatment." *Id.* at 7-8. Plaintiffs explain that requiring Jane Doe to petition the Court frequently to receive funds from the account to pay for John Doe 1's medical treatments would be burdensome to both John Doe 1's parents and the Court. *Id.* at 8.

Under Option 4, Plaintiffs propose that no funds are deducted from the originally proposed gross settlement amount for John Doe 1 to reimburse Jane Doe for medical expenses, and that John Doe 1's entire net recovery (calculated at $26,355.67) would be placed in a "blocked account." *Id.* at 8.

Turning back to Option 1, Plaintiffs propose the Court earmark $6,290.00 of John Doe 1's settlement funds to be paid to Jane Doe for reimbursement of John Doe 1's medical

3:20-cv-00224-GPC-AHG

expenses, pursuant to Cal. Probate Code § 3601. The undersigned has already discussed why this aspect of Plaintiffs' proposal under Option 1 is fair and reasonable.

However, the second piece of Plaintiff's proposal under Option 1—that the Court split John Doe's net recovery into two amounts of $64.39 and $19,999.99, and disburse these amounts in two different methods—is untenable. The undersigned could not in good faith recommend Option 1 to the Court as stated by Plaintiffs. Specifically, the request to place some trivial portion of John Doe 1's net recovery in a blocked account in order to artificially reduce his net recovery to one penny below the $20,000 ceiling set forth in § 3611(d) would improperly circumvent the dictates of the statutory scheme. The Court's mandated role in approving minors' compromises is to protect the best interest of minor plaintiffs, who cannot act on their own behalf in litigation but whose parents are seeking to surrender their children's rights to bring certain claims when they reach the age of majority. Although the difference is minimal, the statutory scheme expressly creates a firm $20,000 ceiling before courts are able to exercise their discretion to approve a method of disbursement that is not included under the other subprovisions of § 3611. In other words, any net recovery to a minor plaintiff exceeding $20,000 *cannot* legally be subject to the Court's discretion under § 3611(d) to order a minor's net settlement proceeds "be held on any other conditions the Court in its discretion determines to be in the best interest of the minor[.]" Therefore, the undersigned is compelled to conclude that Option 1, as stated by Plaintiffs, would be directly at odds with the Court's purpose in approving minor settlements.

Nonetheless, adjusting for Plaintiffs' mathematical errors, distribution under Option 1 can be completed in compliance with the statute. Plaintiffs calculate John Doe 1's gross settlement amount as $35,380.88, which matches the amount proposed in the initial Petition. *See* ECF No. 49-1 at 4; ECF No. 54 at 4. But, as discussed *supra* n.2, Plaintiffs' calculated amount stems from an apparent error. In the Petition, Plaintiffs ask that 52% of the total settlement amount of $67,500 go to John Doe 1. Contrary to Plaintiffs' calculation, 52% of $67,500 is only $35,100, not $35,380.88. If the Court deducts 25% of

that amount, or $8,775, to go towards attorney fees, $241.71 for litigation costs, and $6,290 to reimburse Jane Doe for past medical expenses, the total net recovery amount to John Doe 1 is **$19,793.29**, which falls below the $20,000 ceiling of § 3611(d) without any need to create a separate blocked account.

Further, the undersigned agrees that the Court should exercise the discretion afforded to it under § 3611(d) in this case given the costly circumstances faced by John Doe 1 and his parents as a result of his autism spectrum disorder. Jane Doe provided a declaration in support of the Supplemental Brief, swearing under penalty of perjury in pertinent part that (1) she agrees to use any and all monies obtained in the settlement on behalf of her sons for their direct benefit; (2) since at least the commencement of this lawsuit, she has spent approximately $500-$700 per month out of pocket on medical treatment and therapies for John Doe 1 to treat his autism spectrum disorder, and she has never been compensated for those expenses; (3) John Doe 1's medical treatment that he previously received, which was covered by insurance, is no longer available due to COVID-19, and Jane Doe expects that she may have to pay approximately $187 per hour for an alternative service that will not be covered by insurance; (4) any funds recovered or paid to Jane Doe on behalf of John Doe 1 "would be used to pay for his current and future medical treatment and therapies resulting from his Autism Spectrum disorder[;]" and, finally, (5) Jane Doe expects to pay at least $7,480 in future medical expenses for the benefit of John Doe 1. ECF No. 54-2, Jane Doe Decl. ¶¶ 2-3, 6-8.

Having personally facilitated the ENE and the fairness hearing and having interacted with Jane Doe, the undersigned has every reason to believe that Jane Doe's Declaration is truthful, and no reason to fear that she or her husband would misuse the funds from John Doe 1's net recovery for their own benefit. It was clear to the undersigned that John Doe 1's asserted damages, including in particular his autism spectrum disorder and Plaintiffs' allegation that his withdrawal from school greatly exacerbated the disorder and led to significant regression, were what ultimately drove the settlement. Plaintiffs' decision to allot the largest portion of the settlement to John Doe 1 also reflects that his purported

injuries were considered by Plaintiffs to have resulted in the most damages, despite the fact that all rent payments for the subject property were made by his parents.

Consequently, the undersigned concludes that this is precisely the type of case where the Court should exercise its discretion under § 3611(d) to permit John Doe 1's net recovery to be held by his mother, Jane Doe, because doing so would be in John Doe 1's best interest. Disbursing the funds to Jane Doe directly is the least burdensome method of disbursement provided under § 3611 for Jane Doe to be able to readily access the funds for John Doe 1's costly medical treatment and care.

Therefore, the Court **RECOMMENDS** that the Court approve the disbursement of John Doe 1's net recovery of $19,793.29 to his mother, Jane Doe, pursuant to § 3611(d).

## I.   CONCLUSION

For the reasons discussed above, **IT IS HEREBY RECOMMENDED** that the District Court issue an Order: (1) adopting this Report and Recommendation; (2) requiring Jane Doe to provide the verified written assurance required by Cal. Prob. Code § 3401(c)(2) to Defendants, and filing a copy of the same with the Court; and (3) **GRANTING** the *ex parte* petition of minor Plaintiffs John Doe 1 and John Doe 2, by and through their mother and guardian *ad litem* Jane Doe, for approval of the compromise of the minor Plaintiffs' disputed claims (ECF No. 49), as amended by the Supplemental Brief in Support of the Petition (ECF No. 54), and in accordance with the undersigned's specific recommendations herein, resulting in the following distribution to the minor Plaintiffs:

**John Doe 1:** gross settlement amount of $35,100, less $8,775 in attorney fees, $241.71 in litigation costs, and $6,290 to be reimbursed to Jane Doe for past medical expenses, for a net recovery of $19,793.29, to be held by Jane Doe to use solely for John Doe 1's benefit pursuant to Cal. Prob. Code § 3611(d); and

**John Doe 2:** gross settlement amount of $2,025, less $506.25 in attorney fees and $241.71 in litigation costs, for a net recovery of $1,277.04, to be paid to Jane Doe

pursuant to Cal. Prob. Code § 3611(e) (provided Jane Doe first complies with the requirements of Cal. Prob. Code § 3401(c)(2)).

**IT IS FURTHER ORDERED** that no later than **September 25, 2020**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be filed with the Court and served on all parties no later than **October 2, 2020**.

Notably, counsel for the parties stated during the fairness hearing that they would consent to waive objections to the Report and Recommendation. **If counsel still wishes to waive the objections period, they should file a joint stipulation to that effect immediately**, to allow the Court to adopt this Report and Recommendation without further delay.

Dated:  September 18, 2020

Honorable Allison H. Goddard
United States Magistrate Judge